**Debbie Swims BROWN, Respondent,**

v.

**Shelbie T. BROWN, Appellant.**

**No. WD34293.**

Missouri Court of Appeals,
Western District.

June 26, 1984.

Vincent F. Igoe, Jr., Liberty, for appellant.

Catherine P. Logan, Lee's Summit, for respondent.

Before TURNAGE, C.J., and DIXON and CLARK, JJ.

DIXON, Judge.

Shelbie Brown appeals from the monetary portion of a dissolution of marriage judgment awarding his wife Debbie $8,000 maintenance in gross. Shelbie asserts that the maintenance in gross was erroneously adjudicated because there was no substantial evidence Debbie was unable to support herself, that the maintenance award is excessive, and that the maintenance award is

contrary to public policy since Debbie had lived with and been supported by another man for about twenty-seven months prior to the dissolution.

Shelbie Brown and Debbie Brown were married for approximately six years. No children were born of the marriage. The Browns were the only witnesses during the trial. The state of tranquility of the marital home was sharply disputed. There is no necessity to detail the various assertions of misbehavior since they relate entirely to the relationship of the parties during the marriage.

Debbie had no monthly income at trial and monthly expenses of $512.00. She admitted that since the separation and for twenty-seven months prior to the decree she had been living with Ken Baxter. Ken was separated from his wife and Debbie stated that she thought they would later marry if the trial court granted her dissolution from Shelbie. According to Debbie, Ken was earning $40,000 per year as a truck driver. She admitted that at least for several months before trial Ken had been paying all of her expenses from his earnings plus what little funds she had contributed. He had provided the majority of her support the entire time they had been living together.

Except for a short period at the beginning of the marriage, Shelbie had been employed and, at the time of trial, was working as a field representative for a machinery company. His yearly salary at the time of trial was approximately $25,000. Debbie, on the other hand, had been employed early in the marriage but at the time of the couple's separation was not working outside the home. She claimed that at her husband's insistence she had turned down a hostess job at a local restaurant while Shelbie testified that he encouraged her to accept the job. Following the separation Debbie was employed for short periods at two local nursing care centers, earning minimum wage at each, and as a baby sitter for about $40 per week. At trial, she was unemployed.

This factual setting and the claims of the appellant husband squarely raise the issue of the relevance and effect of proof of support by a cohabitant on the issue of maintenance.

The support afforded in a nonmarital setting by a live-in companion has recently emerged as a perplexing issue in dissolution actions. Two recent articles have explored various ramifications of the problem. Oldham, *Cohabitation By An Alimony Recipient Revisited,* 20 J.Fam.L. 615 (1982) (Oldham II); Oldham, *The Effect of Unmarried Cohabitation by a Former Spouse upon His or Her Right to Continue to Receive Alimony,* 17 J.Fam.Law. 249 (1979) (Oldham I).

These articles demonstrate the difficulty of applying traditional legal analysis to the social phenomenon of a non-marital live-in relationship that does not have the legal consequences of marriage. Most of the authority and statutory solutions discussed in the articles focus on the problem of terminating periodic alimony upon proof of such a relationship between the alimony recipient and a live-in companion. The debate rages as to whether such a relationship is the functional equivalent of marriage or, as sometimes referred to, a defacto marriage and, consequently, should terminate the maintenance. Although that is not the precise issue in the present case, the various approaches of the courts to the termination of periodic alimony are helpful in resolving the issue presented in this case. Absent a statute relating specifically to such support from a cohabitant, the majority view, and a view that has also been described as traditional, holds that cohabitation requires modification or suspension of the alimony award if it is established that the support needs of the recipient have changed. Oldham I, *supra,* at 254. No fault can be found with this when the cohabitant has assumed the obligation of support since the determination of need is then relatively straight forward.

One of the difficulties in the application of the majority rule is that the cohabiting parties may agree to share the expenses of

the live-in arrangement in such a way that the spouse receiving the maintenance will continue to have a "need" spawned by the agreement for "sharing expenses." *In Re Marriage of Lieb*, 80 Cal.App.3d 629, 145 Cal.Rptr. 763 (1978), demonstrates such a situation. The California court reduced the maintenance upon a rationale that emphasized the contribution by the ex-wife maintenance recipient to the cohabitant of her "services" at the expense of the ex-husband.

The commentators assert that the result in *Lieb* is fair and equitable but decry the rationale, pointing out that aside from the sexual connotation, the rationale would apply to any arrangement concerning shared quarters and living expenses, even familial relationships. Oldham II, *supra*, at 624–626.

What has been referred to as the minority view simply eliminates any further maintenance on the ground of the existence of the cohabiting relationship. Oldham I, *supra*, at 254. Since there is no creation of any right of support in such nonmarital relationships, nor any necessity for permanence, this may create societal problems in casting adrift ex-spouses ill qualified to provide for their own welfare. Ostensibly, the original maintenance award had determined that inability. A transitory cohabitation is unlikely to have altered the capability of self-support, but it may in some cases have done so, much as rehabilitative maintenance is intended to provide temporary support during a period of adjustment.

The more recent case law from other jurisdictions has developed an analytical basis for determining such an issue.

*Bisig v. Bisig*, N.H., 469 A.2d 1348 (1983), analyzed the effect of cohabitation upon periodic maintenance and held that it did not cause a termination of the right to maintenance but was a factor to consider on the amount and duration of maintenance.

Florida has also adopted a view that cohabitation is not an absolute bar but is to be considered as a factor in determining the amount and duration of maintenance.

*Bentzoni v. Bentzoni*, 442 So.2d 235 (Fla. App.1983). The New Jersey Supreme Court has adopted an economic needs test to evaluate the impact of cohabitation upon modification of maintenance. *Gayet v. Gayet*, 92 N.J. 149, 456 A.2d 102 (1983). The Supreme Court of Wisconsin in *Van Gorder v. Van Gorder*, 110 Wis.2d 188, 327 N.W.2d 674 (1983), rejected outright termination upon proof of cohabitation but ordered the trial court to review the maintenance award in the light of the economic effect of the cohabitation upon the need of the maintenance recipient. In making this analysis, the Wisconsin court relied heavily upon the dissolution statutes relating to maintenance, which are very similar to our statutes.

The importance of the case law rationale in the instant case is that the attention of the courts has been directed to the *satisfaction* of the *need* and not the right to maintenance. The courts that have considered the issue have emphasized the effect of assistance of a cohabitant as a resource affecting the necessity for maintenance payments in closing the gap between the resources of the maintenance recipient and the need.

The statutory approach under our dissolution law reflects a similar approach as to amount and duration but requires a somewhat different analysis to determine the initial issue of the right to maintenance.

■ The statute, Section 452.335, RSMo 1978, provides a two-step process in the award of maintenance. Section 452.335.1 explicitly requires first that the court may grant a maintenance order "only if it finds" that the spouse seeking maintenance "lacks sufficient property" to meet "reasonable needs" *and* is unable to provide such support through suitable employment or because of custodial duties. Evidence of those two narrowly defined criteria determine eligibility for a maintenance award. Section 452.335.2 then provides that the court may consider "all relevant factors" and lists specific factors to be considered in the determination of the amount and dura-

tion of the maintenance award. Among those factors are the "financial resources" of the party seeking maintenance and "ability to meet ... needs independently."

Applying the first statutory directive to the facts of the instant case, the evidence of support by the cohabitant cannot be utilized to deny to Debbie a *right* to maintenance. Support from the cohabitant is not "property" of Debbie. She has no legal claim to such support, and it is completely irrelevant to the issue of her ability to support herself. The claim of the husband that evidence of cohabitation bars the right to maintenance must be rejected.

As to the second step of the determination, the amount and duration of the maintenance to be award, a different result is indicated.

The statute does specify seven factors to consider, none of which specifically address a cohabitant's "support." Despite any reference to cohabitation as affecting support, the seven enumerated factors do specifically refer to the "conduct of a party seeking maintenance during the marriage." Under the facts of this case showing cohabitation prior to the dissolution decree, such conduct is relevant on the issue of the duration and amount of maintenance awarded by specific statutory direction.

The seven enumerated factors are also preceded by the statutory direction, "considering all *relevant* factors including ...." That direction permits consideration of a relevant factor not included in the enumeration. *Toomey v. Toomey,* 636 S.W.2d 313 (Mo. banc 1982) *cert. denied,* 459 U.S. 1106, 103 S.Ct. 730, 74 L.Ed.2d 955 (1983); *In re Marriage of Dodd,* 532 S.W.2d 885 (Mo.App.1976).

The evidence in this case that Ken had supported Debbie for twenty-seven months and that they planned to marry is highly relevant in the circumstances. This is a short marriage. There were no children, and there was only insubstantial property, which was divided between the parties. There is nothing to offset these facts that would justify the award of $8,000 maintenance in gross. Maintenance in gross is an award that survives remarriage or death. *D.E.W. v. M.W.,* 552 S.W.2d 280 (Mo.App.1977). In view of Debbie's plan to marry Ken, such an award with no other factual basis to support it seems unjust. The analysis of the case law from other jurisdictions and our statute suggest that the existence of the support from the cohabitant should be considered by the trial court, as it affects the duration and amount of the award. Likewise, the uncontroverted evidence of Debbie's conduct during the marriage affects the amount and duration of the award. When these factors are considered, the award of $8,000 maintenance in gross is palpably in error.

The cause is reversed and remanded to the trial court with directions to set aside the award of $8,000 maintenance in gross and redetermine the amount and duration of Debbie's maintenance. In determining that issue, the court should consider the evidence of support furnished by Ken, and the evidence of Debbie's conduct during the marriage.

Reversed and remanded with directions.

All concur.