**William E. WHITLEY,**
**Defendant–Respondent,**

v.

**Karen Kay WHITLEY,**
**Plaintiff–Appellant.**

No. WD 40914.

Missouri Court of Appeals,
Western District.

June 13, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 29, 1989.

Application to Transfer Denied
Nov. 14, 1989.

Mark W. Cowing (argued), Frank P. Barker, III, Kansas City, for plaintiff-appellant.

J.W. Williamson, Jr., Independence, for defendant-respondent.

Before NUGENT, P.J., and SHANGLER and CLARK, JJ.

NUGENT, Presiding Judge.

Karen Kay Whitley appeals from the court's order denying her motion for contempt against William Whitley. Mrs. Whitley moved for contempt following Mr. Whitley's refusal after July of 1986 to pay maintenance. Mr. Whitley answered that his maintenance obligations had ceased as a result of Mrs. Whitley's common-law marriage to one Moses Borntregar, also known as David Miller. The trial court *found that a common-law marriage existed* under the law of Texas and overruled the motion for contempt. We affirm.

The court entered the dissolution decree from which Mr. Whitley's maintenance obligation arises on June 22, 1984. That decree ordered Mr. Whitley to pay Mrs. Whitley's insurance premiums and $500 monthly maintenance until her death or remarriage. Mrs. Whitley left Mr. Whitley in May of 1983 and moved to Arlington, Texas, to share an apartment with Moses Borntregar. (The witness who testified in this case identified Mr. Borntregar by his alias, David Miller. Hereafter, we will refer to him as Mr. Miller.) In June of 1983, Mr. Whitley petitioned for divorce.

Mrs. Whitley and Mr. Miller purchased a house at 6505 Forestview in Arlington, Texas. They signed a deed of trust for that property, dated June 24, 1983, as David Miller and Karen Kay Miller, husband and wife. Mr. Miller provided the down payment for the house. Mrs. Whitley did not find work in Arlington until January of 1984. Until then her father and Mr. Miller provided funds for the house payment and other household expenses. She testified that she spent several months of 1983 in Elgin, Illinois, with her father. Mrs. Whitley admitted that she had inaccurately responded to interrogatories in the divorce action. She failed to disclose her ownership of the house in Arlington and gave her father's address in Elgin as her current address.

Mr. Miller lived in the house at 6505 Forestview. He took responsibility for half of the household expenses. Mrs. Whitley listed a phone number at that address under the name of Kay Miller. They sold the house on May 29, 1984, issuing a warranty deed in the name of David Miller and Kay Miller, husband and wife. When she sold the house, she told Mr. Miller that she intended to return to Kansas City to reconcile with her husband. That reconciliation never occurred.

Following the sale, Mrs. Whitley moved into an Arlington apartment with another woman. In August of 1984, she purchased a home on River Bend Drive in Arlington. She made the down payment and bought it in the name of Karen Kay Whitley, a single person. Mr. Miller moved into that house as well.

She testified that at that time her relationship with Mr. Miller differed from the one they enjoyed when they lived together on Forestview. She said that both had tried to reconcile with their respective spouses, and neither intended to enter a new marriage relationship. Mr. Miller was absent for long periods on business and Mrs. Whitley dated other people.

She and Mr. Miller split the expenses of the house. If Mrs. Whitley fell behind on her share, she would reimburse Mr. Miller for any excess he paid. She admitted that

she could not afford the house payments without his help. He opened a checking account in the name of David Miller and she occasionally wrote checks on that account, signing them as Kay Miller.

Mrs. Whitley also purchased another house as rental property. She listed her name on the deed of trust as Karen Kay Whitley, a single person. She sold the River Bend house in 1987 and purchased a new house, again in the name of Karen Kay Whitley. Mr. Miller moved to that house with her and continued to live there at the time of the contempt hearing.

Mrs. Whitley lists her name on her driver's license and her credit cards as Karen Kay Whitley. She applied for those cards as an unmarried person. She denies representing herself as Mr. Miller's wife or him as her husband. She testified that she told him that she would never marry again. She described her relationship with him as merely sharing a house, "nothing permanent." Mr. Miller, a resident of Texas, did not testify at the hearing.

Several of Mrs. Whitley's current and former neighbors testified by way of deposition. Sally Reeves lived next to Mrs. Whitley on Forestview. Mrs. Whitley introduced herself only as Kay. Ms. Reeves testified that she thought she knew of Mrs. Whitley by a last name other than Whitley, but she could not remember it. No one ever told her that Karen Kay Whitley and Mr. Miller were married; she assumed it. She has had no contact with either of them since they moved from Forestview.

Vern Kahler lived across from Mrs. Whitley on Forestview. He never heard anyone refer to this neighbor woman as Mrs. Miller. Mr. Miller had told Mr. Kahler that Mrs. Whitley is not his wife. Mr. Kahler's wife, Helen Kahler, testified that she had not seen Mrs. Whitley since she moved from Forestview. She always knew her as Kay Whitley. No one ever referred to her as Mrs. Miller, nor had she ever represented herself as Mr. Miller's wife.

Mr. Whitley contradicted Mrs. Kahler. He testified over objection that Mrs. Kahler had told him that she and Mrs. Whitley were good friends and that they talked regularly. Mr. Whitley testified that Mrs. Kahler told him that Mrs. Whitley was married to David Miller.

Theodore Berenkemp lives in Mrs. Whitley's current neighborhood. He knows that she and Mr. Miller live in the same house. He has never heard her referred to as Mrs. Miller. When he once received mail for Kay Whitley he asked Mr. Miller if she was his wife. Mr. Miller told Mr. Berenkemp that Mrs. Whitley was not his wife.

Corry McDonald testified that in 1985 he had hired Mr. Miller to remodel his kitchen. He usually contacted Mr. Miller at the phone number of the house where Mrs. Whitley and Mr. Miller lived. On two occasions a woman answered the phone. When he addressed that woman as Mrs. Miller she neither denied nor confirmed her identity. He once asked Mr. Miller about his wife's opinion on a particular subject, but he did not remember Mr. Miller's response. Mrs. Whitley introduced evidence of Mr. McDonald's convictions for possession of narcotics and for theft.

The court found that Mrs. Whitley and Mr. Miller had lived together in Texas as husband and wife and had represented themselves as such before June 22, 1984, and that from that conduct one could infer that the parties agreed to be married. The court further found that after June 22, 1984, Mrs. Whitley and Mr. Miller had lived together as husband and wife and represented themselves as being married and that after that date they had entered into a common-law marriage as defined by Texas law. Therefore, the court entered an order denying the motion for contempt.

Mrs. Whitley appeals from that order. She alleges that no substantial evidence supports the court's findings or, in the alternative, that such findings were against the weight of the evidence. She also argues that the trial court erroneously applied Missouri law with respect to the burden of proof required to prove a common-law marriage as a defense to a motion for contempt; that the court erred in admitting hearsay testimony; and that the court erroneously overruled her motion in limine that sought to exclude any evidence of a com-

mon-law marriage occurring before the date of the Whitley dissolution decree.

Before we consider her argument concerning the sufficiency of the evidence, we must address her evidentiary challenges. Erroneous admission of evidence in a court tried case does not provide a grounds for reversal unless insufficient evidence remains to support the court's judgment. *Smead v. Allen*, 581 S.W.2d 93, 94 (Mo.App.1979); *Broyles v. Broyles*, 555 S.W.2d 696, 700 (Mo.App.1977). In considering the sufficiency of the evidence, however, we must disregard any evidence that the court improperly admitted.

In her motion in limine, Mrs. Whitley argued that the court should admit no evidence concerning her relationship with Mr. Miller before June 24, 1984, the date of her dissolution decree. She contends that the doctrines of merger, collateral estoppel, and res judicata prohibit the court from addressing any acts alleged to have occurred before the date of the decree. *See Hopkins v. Hopkins*, 591 S.W.2d 716, 719 (Mo.App.1979). Those principles, however, apply to motions to modify a divorce decree. Here, the husband seeks instead to prove the existence of a condition, specifically, Mrs. Whitley's Texas common-law remarriage, that would terminate his maintenance obligation according to the terms of the Whitley dissolution decree. The evidence that she sought to exclude in the motion in limine bore relevance to the existence of her post-decree agreement with Mr. Miller to enter into a common-law marriage. The court properly overruled her motion.

Mrs. Whitley also contends that part of Corry McDonald's testimony amounted to hearsay. Mr. McDonald testified that he addressed as "Mrs. Miller" a woman who answered the phone at the house Mrs. Whitley shared with Mr. Miller. That woman neither denied nor confirmed her identity. The woman's silence in the face of a suggestion that she was Mrs. Miller might then be seen as an admission that the caller had correctly identified her. *Creager v. Chilson*, 453 S.W.2d 941, 943 (Mo.1970). An adoptive admission serves

as an exception to the hearsay rule. The court may allow an admission's use only against a party opponent. *Gordon v. Oidtman*, 692 S.W.2d 349, 355 (Mo.App.1985). That party may by silence adopt a statement that another person makes. The speaker must make the assertion in the presence and hearing of the party and it must be one that would naturally call for a reply. Finally, the statement must not have occurred in a judicial proceeding. *State v. Samuel*, 521 S.W.2d 374, 375 (Mo. 1975) (en banc).

To hold that the court properly admitted Mr. McDonald's testimony we would have to make several assumptions. First, because an admission may only be used against a party, we would have to assume Karen Kay Whitley answered the phone when Mr. McDonald called. Second we would have to assume that speaking to someone on the phone amounts to being in that person's presence. Finally, we would have to assume that a woman who answers a phone call for Mr. Miller would naturally confirm or deny the caller's assumption that Mrs. Miller answered the phone. To make those assumptions, however, we would have to ignore the general rule that courts should consider adoptive admissions "as dangerous and to be received with caution." *Creager v. Chilson, supra*, 453 S.W.2d at 944 (citing 29 Am.Jur.2d, Evidence § 633). We conclude, therefore, that the court improperly admitted Mr. McDonald's testimony.

Mrs. Whitley also correctly identifies as hearsay Mr. Whitley's testimony concerning statements that Mrs. Kahler made. Mr. Whitley presented Mrs. Kahler's deposition in which she stated that she knew that Karen Kay Whitley was not married to Mr. Miller. Mr. Whitley then took the stand to refute Mrs. Kahler's testimony. He testified that Mrs. Kahler had previously told him of her knowledge of Mrs. Whitley's and Mr. Miller's marriage. Clearly, he sought to prove the truth of that statement. Thus it became hearsay.

Mr. Whitley argues, however, that the court properly admitted the statements un-

der the rule announced in *Rowe v. Farmers Insurance Co., Inc.*, 699 S.W.2d 423 (Mo. 1985) (en banc). *Rowe* held that a party may impeach his own witness with prior inconsistent statements only when that witness is available for cross-examination. *Id.* at 428. Here, however, Mr. Whitley presented Mrs. Kahler's testimony only by way of deposition. She was not, therefore, available for cross-examination.

Moreover, Mr. Whitley failed to provide the proper foundation for such impeachment. Before admitting a prior inconsistent statement the proponent must quote the statement to the witness, point out the circumstances under which the witness made it, including the person to whom the witness spoke and the time and place of the utterance. He must ask the witness whether she made the statement and give her the opportunity to admit it, deny it, or explain it. *Hildebrand v. Ballard*, 767 S.W.2d 62, 65 (Mo.App.1989); *Frey v. Barnes Hospital*, 706 S.W.2d 51, 55 (Mo. App.1986). Here, he merely asked the witness whether she had had a conversation with Mr. Whitley in which she discussed her knowledge of whether Karen Whitley and Mr. Miller had held themselves out as husband and wife. That question did not serve to lay the proper foundation.

Therefore, because Mrs. Kahler was not available in court for cross-examination concerning her prior inconsistent statement and because Mr. Whitley failed to lay the proper foundation for its admission, the court erred in admitting it. The court's admission of incompetent hearsay will provide grounds for reversal, however, only if the remaining competent evidence does not support the court's judgment. *See In re S.P.W.*, 707 S.W.2d 814, 816 (Mo.App.1986) (reversing court's order when removal of hearsay evidence left insufficient competent evidence).

■ Mr. Whitley seeks to prove the existence of a common-law marriage between Mrs. Whitley and Mr. Miller. The Missouri legislature has rejected the connection of common-law marriage. *See* § 451.040.5.[1] Missouri will, however, recognize as valid a

common-law marriage that is valid where the parties reside. *See Doyle v. Doyle*, 497 S.W.2d 846, 847 (Mo.App.1973). The proponent of that status must present "stringent proof" in its support. *Preston v. Preston*, 342 S.W.2d 956, 957 (Mo.App.1961).

Mrs. Whitley and Mr. Miller reside in Texas, therefore, Texas law will apply. Texas statutes provide as follows:

(a) In any judicial, administrative, or other proceeding, the marriage of a man and woman may be proved by evidence that:

. . . . .

(2) they agreed to be married, and after the agreement they lived together in this state as husband and wife and there represented to others that they were married.

(b) In any proceeding in which a marriage is to be proved under Subsection (a)(2) of this section, the agreement of the parties to marry may be inferred if it is proved that they lived together as husband and wife and represented to others that they were married.

Texas Family Code § 1.91 (1975).

Texas courts have construed the statute to require three elements: (1) an agreement to marry; (2) co-habitation as husband and wife; and (3) representation to others that the parties are husband and wife. *See e.g., Estate of Claveria v. Claveria*, 615 S.W.2d 164, 166 (Tex.1981); *Ex parte Threet*, 160 Tex. 482, 333 S.W.2d 361, 364 (1960); *Estate of Giessel*, 734 S.W.2d 27, 30 (Tex.Ct.App.1987). The elements must all appear at one time. *Bolash v. Heid*, 733 S.W.2d 698, 699 (Tex.Ct.App. 1987); *Gary v. Gary*, 490 S.W.2d 929, 932 (Tex.Ct.App.1973). If an impediment to the common-law marriage exists, the parties must enter into a new agreement after removal of the impediment. *Howard v. Howard*, 459 S.W.2d 901, 904 (Tex.Ct.App. 1970).

■ Until the June 24, 1984, dissolution, Mrs. Whitley's marriage to Mr. Whitley impeded her contracting a common-law

---

1. Revised Statutes of Missouri, 1986.

marriage with Mr. Miller. *Id.* Consequently, to meet his burden of proof, Mr. Whitley had to establish the concurrence of the three elements after that date. We will review the remaining competent evidence to establish those elements in the light most favorable to the judgment, giving him the benefit of all of the reasonable inferences from that evidence. *Fountain v. Schlanker*, 651 S.W.2d 594, 596 (Mo.App. 1983).

Mrs. Whitley's execution of a warranty deed and a deed of trust in the name of Karen Kay Miller occurred before the dissolution decree. Similarly, Ms. Lane's testimony concerned conduct before that date. If no impediment to a common-law marriage had existed at that time, that evidence might support a finding of such a relationship. However, because Mrs. Whitley's prior marriage prevented her marriage to Mr. Miller, that evidence creates only an inference, albeit a strong one, that they were disposed to enter a marriage relationship. That inference supports the court's conclusion that she and Mr. Miller agreed to be married.

Mrs. Whitley now lives with Mr. Miller, although she denied that their relationship amounts to a marriage. The trial court could disbelieve that testimony and infer that they lived together as husband and wife. *Fountain v. Schlanker, supra.* Mrs. Whitley's admission that she signed checks as Kay Miller further supports the court's conclusion that a common-law marriage exists.

Finally, we must agree with Mr. Whitley's argument that Mrs. Whitley's failure to call Mr. Miller to testify created an inference that he would testify unfavorably to her position. As the prevailing party, Mr. Whitley has the right to all of the favorable inferences that the evidence will support. *Id.* Missouri law recognizes the inference that he claims. *See Sebree v. Rosen*, 393 S.W.2d 590, 594 (Mo.1965).

Mrs. Whitley responds, however, that the one may not rely upon such an inference when the absent witness is equally available to both parties. *See Leehy v. Supreme Express & Transfer Co.*, 646 S.W.2d 786, 790 (Mo.1983) (en banc). She fails to explain, however, why Mr. Miller was equally available as a witness for Mr. Whitley. Mr. Miller lives in Texas and, therefore, would not be subject to subpoena in Missouri. *See Buckman v. Missouri, Kansas & Texas Railway Co.*, 121 Mo.App. 299, 98 S.W. 820, 822 (1906). His relationship with Mrs. Whitley would lead one to expect that he would be willing voluntarily to appear on her behalf. He most certainly would possess knowledge essential to the issue in this case: whether he had agreed to marry Mrs. Whitley; whether he had represented her to others as his wife; and whether he lived with her as her husband. The inference that his testimony on those facts would not support her position provides additional substantial evidence to support the trial court's judgment.

Accordingly, we affirm the trial court's order denying Mrs. Whitley's motion for contempt.

All concur.