Heike WESTON, Respondent,

v.

Marion D. WESTON, Movant–Appellant.

No. 18844.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 25, 1994.

John R. Sims, Greg R. Bridges, Sims, Bridges and Dolence, Neosho, for movant-appellant.

Walter E. Williams, Joplin, for respondent.

GARRISON, Judge.

This is an appeal from a judgment modifying a dissolution of marriage decree. Appellant (hereafter referred to as Husband) contends that the trial court erred (1) by not terminating maintenance to his former spouse (Wife) because of her cohabitation with another man; (2) by not terminating maintenance because of Wife's failure to seek employment, or reducing it by an amount she was capable of earning; and (3) by awarding attorney's fees to her.

The parties met in Germany, Wife's native country, when Husband was stationed there in the military. Their marriage of approximately 31-½ years produced three children, all of whom were emancipated at the time of the dissolution in April 1990. At that time, Wife was 50 years of age and, although she had obtained a GED from Crowder College, she had not been employed outside the home other than doing some menial work in Husband's optometry office. The dissolution court found that her employment opportunities were limited to minimum wage jobs and awarded her $1850 per month as maintenance.

In August 1992, Husband filed a motion to modify by which he sought to "terminate the maintenance order, or in the alternative reduce the same." He alleged that Wife was then cohabiting on a permanent basis with Victor Lippoldt under circumstances indicating that it was a substitute for marriage; Wife's expenses were less than contemplated at the time of the dissolution because of the cohabitation; Wife had made no effort to obtain employment or become self-sufficient; and Husband was unable to support himself and his business and also pay the maintenance award. Wife filed a counter-motion to modify in which she requested increased maintenance, alleging an inability to maintain her prior standard of living and Husband's financial ability to pay additional amounts.

The trial court sustained Husband's motion and reduced the maintenance from $1850 per month to $1568.50 per month. It denied Wife's motion but found that her reasonable expenses were $2871.50 per month. From that amount it apparently deducted $572 as the value of the contributions made for her benefit by Mr. Lippoldt and $731 per month representing what she could earn from a minimum wage job to arrive at the modified award of $1568.50. Husband appeals.

In reviewing an order entered pursuant to a motion to modify, we are limited to

determining whether it is supported by substantial evidence, whether it is against the weight of the evidence, or whether it erroneously declares or applies the law. Rule 73.-01(c), V.A.M.R.; *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *Hicks v. Hicks,* 798 S.W.2d 524, 525–26 (Mo.App.S.D. 1990). Deference is given to the trial court's opportunity to judge the credibility of witnesses. *Hoffmann v. Hoffmann,* 676 S.W.2d 817, 826 (Mo. banc 1984). Considerable discretion is vested in the trial court concerning the amount of maintenance payments. *Markowski v. Markowski,* 736 S.W.2d 463, 465 (Mo.App.W.D.1987).

■ In his first point, Husband contends that the trial court erred by not terminating his obligation to pay maintenance because of Wife's cohabitation with Mr. Lippoldt, which he contends had achieved such a degree of permanence that it had become a substitute for marriage.

In Missouri, § 452.370, RSMo Supp.1992, provides, in pertinent part:

1. ... [T]he provisions of any decree respecting maintenance or support may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable. . . .

. . . .

3. Unless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future statutory maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance.

■ Missouri does not recognize a common law marriage. § 451.040.5; *Whitley v. Whitley,* 778 S.W.2d 233, 238 (Mo.App.W.D. 1989); *Stark v. Thierjung,* 714 S.W.2d 830, 833 (Mo.App.E.D.1986). Likewise, Missouri courts have held that cohabitation is not the equivalent of marriage. *Id.; Schloss v. Schloss,* 682 S.W.2d 53, 54 (Mo.App.E.D. 1984).

Husband, however, cites *Taake v. Taake,* 70 Wis.2d 115, 233 N.W.2d 449 (1975), and *Rubisoff v. Rubisoff,* 242 Miss. 225, 133 So.2d 534 (1961), for the proposition that cohabitation is sufficient in and of itself to terminate maintenance. *Rubisoff* does hold that in Mississippi conduct of a spouse after a divorce can, under some circumstances, amount to a forfeiture of the right to continued alimony. *Id.* at 538. *Taake,* however, holds only that a former wife's cohabitation with another man can constitute a change of circumstances affecting the former husband's responsibility to provide alimony but does not automatically bar future alimony. *Taake v. Taake,* 233 N.W.2d at 453. While *Rubisoff* does not refer to any statutory authority, *Taake* indicates that Wisconsin had a statute requiring the court to terminate alimony upon proof of remarriage.

A number of other cases from foreign jurisdictions have held that non-marital cohabitation may justify modification of a prior maintenance or alimony award if it results in a sufficient change of circumstances. *Lydic v. Lydic,* 664 S.W.2d 941 (Ky.App.1983), involved a Kentucky statute almost identical to § 452.370. There, the court rejected the concept that cohabitation was the equivalent of remarriage and would automatically terminate maintenance. It held that under the facts of that case there had not been such a substantial change of circumstances as to warrant termination of that obligation. The court in *Van Gorder v. Van Gorder,* 110 Wis.2d 188, 327 N.W.2d 674, 678–79 (1983), held that cohabitation, as one of the factors for consideration, may result in a change of the recipient spouse's economic status, thereby providing a basis for a modification of the award. *Wight v. Wight,* 168 W.Va. 334, 284 S.E.2d 625 (1981), recognized cohabitation as a basis for modification of alimony only if it created a change in the recipient spouse's economic condition. To the same effect are *Bisig v. Bisig,* 124 N.H. 372, 469 A.2d 1348 (1983); *Mertens v. Mertens,* 285 N.W.2d 490 (Minn.1979); *Vance v. Vance,* 287 S.C. 615, 340 S.E.2d 554 (App.1986); *DePoorter v. DePoorter,* 509 So.2d 1141 (Fla.Dist.Ct.App. 1987); and *Horr v. Horr,* 445 N.W.2d 26 (S.D.1989).

The view that cohabitation may justify modification or suspension of maintenance if that relationship has affected the financial needs of the recipient was referred to with approval in *Brown v. Brown,* 673 S.W.2d 113

(Mo.App.W.D.1984). Although the *Brown* case involved an initial determination of entitlement to maintenance as opposed to modification of an existing award, the court reviewed the concept of maintenance as affected by a former spouse's non-marital cohabitation. It said that the majority view "holds that cohabitation requires modification or suspension of the alimony award if it is established that the support needs of the recipient have changed." *Id.* at 114. It also said:

> The importance of the case law rationale in the instant case is that the attention of the courts has been directed to the *satisfaction* of the *need* and not the right to maintenance. The courts that have considered the issue have emphasized the effect of assistance of a cohabitant as a resource affecting the necessity for maintenance payments in closing the gap between the resources of the maintenance recipient and the need.

*Id.* at 115. The court also noted that because a spouse does not have a property right to receive support from a cohabitant, such support is irrelevant to the issue of a spouse's ability to be self-supporting, and it cannot be utilized to deny maintenance in a dissolution case. *Id.* at 116. The husband's contention that cohabitation barred the wife's right to receive maintenance in the dissolution action was rejected.

In the instant case, Husband relies primarily on the case of *Herzog v. Herzog,* 761 S.W.2d 267 (Mo.App.E.D.1988). He argues that while Missouri courts have not held that cohabitation alone is sufficient to terminate maintenance, *Herzog* stands for the proposition that it can be discontinued where the relationship has achieved a permanence so that it has become a substitute for marriage. The *Herzog* case involved a former husband's motion to modify maintenance in part because of his ex-wife's cohabitation with another man at the marital home which the wife received in the dissolution. The court acknowledged that maintenance is to provide for reasonable needs and arises from the obligations undertaken in the marriage; that the reason for the provision in § 452.370 which terminates the obligation to pay future maintenance upon remarriage of the receiv-

ing party is because, by the new marriage, that party thereby obtains the same obligation for support from another person; and that non-marital cohabitation does not normally carry with it the legal obligation of support which is an attribute of marriage and is subject to being terminated at any time with no legal repercussions or responsibilities. Noting that § 452.370 does not specifically provide that cohabitation by a former spouse receiving maintenance is a consideration on a motion to modify, it concluded that under equity principles, the trial court must evaluate the new relationship to determine whether equity justifies termination or modification of maintenance on the basis of that changed condition alone. The court indicated that where the relationship had achieved sufficient permanence to indicate that it was actually a substitute for marriage, a court was warranted in concluding that the right to support from the former marriage had been abandoned and the new relationship accepted as its substitute. In determining the degree of permanence involved, the court indicated that the length of the relationship and the parties' intentions could be considered. In that case, however, the court concluded that the trial court correctly denied the requested modification.

Husband points to the fact that at the time of the hearing Wife and Mr. Lippoldt had lived together for almost three years; Mr. Lippoldt did not maintain a separate residence but had moved all of his belongings into the house Wife received in the dissolution; while Wife pays for the home, the car insurance, the maintenance on her car, her health insurance, her income tax, and most of the groceries, Mr. Lippoldt pays for the electricity, cable TV, water bill, newspaper and sometimes the groceries; they share the same bed and have a sexual relationship which is exclusive of others; they are open about their relationship with both of their families and attend family functions together; Mr. Lippoldt does most of the cooking, sometimes mows the yard, helps around the house, including some maintenance, and does most of the grocery shopping; they entertain guests together at social functions, some of which are by invitation in the name of "Heike and Vic"; and they take trips together, in-

cluding trips to visit Wife's children in other cities.

There was also other evidence, however, that Mr. Lippoldt had no intention of marrying Wife; Wife has made no provision in her will for Mr. Lippoldt; in the event of her illness, Wife has made arrangements for her eldest daughter to handle her affairs with no authority in Mr. Lippoldt; she has maintained her car in her own name; they have made no commitments to each other; and their relationship is not a love affair but is based on the needs of two mature people to be kind to each other.

The trial court found that Wife's relationship with Mr. Lippoldt did not justify termination of maintenance, but it considered the existence and effects of the cohabitation, along with other factors, in determining whether Wife's circumstances had undergone a sufficient change so as to warrant a modification of the maintenance award. It found that Mr. Lippoldt's contributions had decreased her financial needs and constituted part of a substantial and continuing change of circumstance justifying a modification. Even though Wife's motion to modify was denied, the trial court found that her monthly expenses of $2871.50 were reasonable. The court also found that Mr. Lippoldt furnished $572 per month toward the support of Wife by way of home maintenance and expenses paid by him. It utilized that figure, together with $731 which Wife could earn from a minimum wage job, in calculating her present financial needs and in establishing the reduced maintenance amount. This is consistent with the concept referred to in *Brown* and that which forms the basis for the several foreign cases cited above. The *Herzog* case does not require a different result. We are, therefore, unable to find that the trial court's failure to terminate maintenance violated the precepts of Rule 73.01(c) and *Murphy v. Carron* cited earlier. Accordingly, this point is denied.

■ In his second point, Husband alleges that the trial court erred by failing to terminate the prior maintenance award or reduce it by the amount it found Wife was capable of earning because she had made no effort to seek employment or become self-supporting.

■ The failure of a maintenance-receiving former spouse to make a good faith effort to seek employment and achieve financial independence within a reasonable time may form the basis for modification of a prior maintenance award. *See Markowski v. Markowski*, 736 S.W.2d at 466. Because of the continuing duty to exert reasonable efforts to attain self-sufficiency, the spouse receiving maintenance will not be permitted to benefit from inaction. *Halliday v. Boland*, 813 S.W.2d 34, 36 (Mo.App.E.D.1991); *Hicks v. Hicks*, 798 S.W.2d at 527. Modification is not mandated, however, by a former spouse's failure to make efforts to become self-supporting. *See Baker v. Baker*, 811 S.W.2d 65, 67 (Mo.App.E.D.1991).

Husband argues that Wife's failure to seek employment, coupled with her cohabitation with Mr. Lippoldt, should mandate termination of maintenance or alternatively a reduction by the full amount the trial court found she was capable of earning. The trial court did find that Wife was capable of earning a minimum wage, which it valued at $731 per month. We gather, however, that Husband contends that credit for the $731 amount should be applied to reduce the prior maintenance amount of $1850 per month. This ignores the fact that, based on the evidence, the trial court found that Wife's reasonable monthly expenses were $2871.50. This finding was supported by substantial evidence. We find no error in the trial court reducing Wife's then reasonable expenses, as opposed to the prior award, by the amount of her presumed income, together with the amount attributable to Mr. Lippoldt's contributions, in arriving at a modified maintenance award of $1568.50 per month. This point is, therefore, denied.

■ In his final point, Husband contends that the trial court erred in awarding Wife $350 as partial reimbursement of her attorney's fees because there was no request for such an award and no evidence supporting it.

In the instant case, Wife requested an award of reasonable attorney's fees in the prayer of her answer to Husband's motion to modify and in the prayer of her own motion. As indicated in *Halliday v. Boland*, 813

S.W.2d at 38, § 452.355, which authorizes an award of attorney's fees in a motion to modify, is silent as to the formalities required. Of significance is whether the party is afforded an adequate notice that a claim is being made and a full opportunity to be heard. *Id. See also Bishop v. Bishop,* 618 S.W.2d 261, 263 (Mo.App.W.D.1981). In the instant case, Husband does not allege that he lacked sufficient notice of the claim for attorney's fees or the opportunity to be heard on it.

Husband also argues that the record at trial is silent concerning attorney's fees and therefore there is no factual basis to support the award. He contends that unusual circumstances are required to support an award of attorney's fees. In this regard, he cites *Campbell v. Campbell,* 825 S.W.2d 319, 323 (Mo.App.W.D.1992); *Lyles v. Lyles,* 710 S.W.2d 440, 444 (Mo.App.E.D.1986); and *In re Marriage of Hoglen,* 682 S.W.2d 179, 182 (Mo.App.S.D.1984). These cases do stand for the proposition that unusual circumstances are required to justify deviation from the rule that each party bears their own expenses of litigation. The court in *Lyles,* however, also said:

> Yet, it is well settled that trial courts are deemed experts on the issue of attorney's fees and need not have evidence adduced on such fees to fix an award. (Citation omitted.) In addition, Section 452.355, RSMo 1978, provides only that the trial court consider "all relevant factors including financial resources" in fashioning a reasonable award of attorney's fees. This is the standard by which the trial court must abide in a modification proceeding.

710 S.W.2d at 444.

The recent case of *Dimmitt v. Dimmitt,* 849 S.W.2d 218, 222 (Mo.App.S.D.1993), indicated that § 452.355.1, RSMo Supp.1991, contains no requirement of unusual circumstances and, as noted in *Lyles,* requires only a consideration of "all relevant factors including the financial resources of both parties." In *Dimmitt,* this court noted that the trial court is vested with broad discretion in ordering payment of attorney's fees which is reviewable only for an abuse of that discretion. *Id.* There, it was contended that the record was devoid of evidence of unusual circumstances or ability to pay, but we affirmed an award of attorney fees, noting that the record contained evidence of the financial resources of the parties and the husband's superior ability to earn. *See also Meservey v. Meservey,* 841 S.W.2d 240, 248 (Mo.App. W.D.1992); *In re Marriage of Stuart,* 805 S.W.2d 309, 314 (Mo.App.E.D.1991); *Mound v. Mound,* 726 S.W.2d 879, 880 (Mo.App.E.D. 1987).

In the instant case, Husband is a doctor of optometry whose income was over $70,000 in each of the two years prior to the hearing. In contrast, the trial court found that Wife was able to earn a minimum wage but had no special employment skills. There was, therefore, evidence of a disparity in the financial resources of these parties which authorized the trial court, in its discretion, to award Wife a partial reimbursement of attorney's fees in the amount of $350. This point is, therefore, denied.

The judgment is affirmed.

FLANIGAN, P.J., and CROW, J., concur.