Catherine Costello BARR, Appellant,

v.

W. Kent BARR, Respondent.

No. WD 51008.

Missouri Court of Appeals,
Western District.

April 23, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 28, 1996.

Allen S. Russell, Russell & Russell, Kansas City, for Appellant.

Michael J. Albano, Independence, for Respondent.

Before FENNER, C.J., P.J., and LOWENSTEIN and BRECKENRIDGE, JJ.

LOWENSTEIN, Judge.

The issue here is whether the following provision, part of a separation agreement incorporated into a dissolution decree, was triggered, terminating an obligation for further maintenance:

> "Said maintenance shall earlier terminate upon the death of either party, *[wife's] conjugal cohabitation with an adult male for a period of sixty (60) days,* or remarriage of [wife]." (emphasis added).

The motion court found in favor of the former husband, Kent, concluding that his former wife, Kitty, had conjugally cohabited with a man for sixty days. Both parties have appealed. Kitty claims maintenance should not have been stopped. Kent claims the order should have allowed him to recoup earlier payments.

In September 1990, the parties obtained a dissolution in Kansas City. Kent was to pay Kitty $4,500 a month maintenance for seventy-two months (until July 30, 1996). Joint custody was awarded, but Kitty was the primary residential custodian.

In September 1992, Kitty met Mr. Buckingham, and they became romantically involved. In 1993, Buckingham moved to St. Louis. Without prior court approval, Kitty and the children also moved to St. Louis. Kitty admits her decision to move from Kansas City to St. Louis was prompted in part by Buckingham's move. Kitty did not work in St. Louis, but spent her time "rehabbing" a house she purchased.

The move to St. Louis prompted Kent to seek to modify the decree. Allowing the move, the court revised visitation, altered support payments, and added a provision that neither party was to "cohabitate with an adult person of the opposite sex to whom they were not married when the children were in their individual custodial care."

Sometime in July 1994, again without court approval, Kitty moved herself and the children to Tucson, Arizona, where Buckingham had just moved. She testified that Buckingham's move was again a "part of my decision [to move]." Kitty said she "felt my opportunities there were much greater than [in] St. Louis." Therefore, she put the St. Louis house on the market and purchased a home in Tucson. Kitty did not work in Tucson, other than at two unpaid modeling jobs.

Kent soon sought modifications, and Kitty countered with a request to remove the children out of state and a request for sole custody. Kent then asked for relief from maintenance, claiming Kitty and Buckingham had been conjugally cohabiting, thus relieving him of the $4,500 per month maintenance payments. Kent unilaterally stopped making maintenance payments after the January 1995 payment. Kitty sought garnishment for the February and March payments. Trial took place in the latter part of March of 1995, and the court reduced Kent's monthly child support to $1,635 per child, granted sole custody to Kitty in Arizona, and revised visitation. None of the decisions relating to the children have been appealed. The only issue here is the maintenance.

■ Review is under *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). This court accepts as true the evidence and inferences favorable to the trial court's judgment. *Butts v. Butts,* 906 S.W.2d 859, 861 (Mo.App. 1995).

Buckingham admitted to spending ten to twelve nights a month at Kitty's house in Tucson. Although he had a company rental unit, he spent only one night a month there and was on the road the rest of the time. Buckingham kept business attire, sport clothes, toiletries, pictures, and golf clubs at Kitty's home. He and Kitty admitted they

continued to have sexual relations at this house. They took trips together. The children testified in chambers that Buckingham was at the house much of the time. One child said Buckingham was considered part of the household and lived with them. Buckingham and Kitty became engaged around the time she moved to Tucson in June 1994, but as of trial in March of 1995, had not set a wedding date.

The trial court quashed the garnishment, ruling the maintenance provision in favor of Kitty had been terminated as of February 1, 1995.

■ On appeal Kitty takes two approaches. First, she claims the evidence favorable to the judgment did not legally amount to a "conjugal cohabitation." Alternatively, she argues, "the plain wording of the decree would require a period of conjugal cohabitation for a period of sixty consecutive days."

Kitty points to evidence that Buckingham had a separate residence in Tucson, did not commingle funds with Kitty, and did not contribute to household expenses. She argues that to establish "conjugal cohabitation" requires more than occasional or even frequent overnight visits, but circumstances such that a court can view the relationship as a substitute for the married state, or as analogous to marriage.

Under § 452.325.1, .5, and .6, RSMo. (1994), the parties were free to settle their dispute on maintenance by a separation agreement. See *In re Marriage of Wilfong*, 658 S.W.2d 45, 48 (Mo.App.1983). They did so by an agreement which was incorporated into the 1990 decree. The plain language of their agreement on the effect of conjugal cohabitation covers the factual situation found by the trial judge to terminate maintenance. The plain language of the agreement does not call for the interpretation proposed by Kitty that she must have had a live-in companion at her home who was held out as a spouse. Without resorting to a dictionary definition of the words "conjugal" and "cohabitation," what Kitty and Buckingham did in Tucson satisfied the maintenance termination clause. They admittedly had sex, and he kept clothing and numerous personal items at her home. Buckingham spent ten to twelve nights a month there when he was not on the road, as compared to one night a month at his "company rental unit." Despite the pretense of Buckingham's maintaining a separate residence, the evidence supports the trial court's finding that Buckingham was cohabitating with Kitty in Kitty's home. This situation went on from June or July of 1994 until trial. The plain language chosen by the parties does not require that the couple hold themselves out to be married or share expenses. Similarly, the language does not demand that Buckingham not have another address. Enforcement of the agreement "in accordance with its terms," *Stark v. Thierjung*, 714 S.W.2d 830, 833 (Mo.App. 1986), calls for an interpretation by the trial court. The testimony of the child made more apparent the fact that Buckingham was at Kitty's residence almost all the time.

Cases involving a discussion on the effect of cohabitation with regard to spousal needs where there is no decretal language on the subject, such as *Weston v. Weston*, 882 S.W.2d 337, 339 (Mo.App.1994), *Herzog v. Herzog*, 761 S.W.2d 267, 268—69 (Mo.App. 1988), and *Brown v. Brown*, 673 S.W.2d 113, 114—15 (Mo.App.1984); *Schloss v. Schloss*, 682 S.W.2d 53, 54 (Mo.App.1984), are inapposite. Kitty's needs were not at issue here because the parties agreed that conjugal cohabitation would terminate maintenance, without regard to Kitty's needs. Similarly, the above cases in which, in order to terminate maintenance, an attempt was made to equate cohabitation with the statutory grounds of remarriage, have no effect here where the parties agreed that "conjugal cohabitation" would terminate maintenance.

Common sense militates against Kitty's argument that the courts should read the term "consecutive" into their agreement on cohabitation. If the parties had intended that "consecutive" be in the agreement, they could have put it in the plain language.

The court will not set aside the judgment on Kent's assertion that the relief he should have gotten should have been pegged all the way back to January of 1993.

Further, though Kitty did not request payment of the two months unpaid after Kent's unapproved peremptory action in cutting off maintenance payments and this court thus, does not award Kitty the maintenance for the unpaid two months, this court does not condone his actions in contravention of § 452.365: "If a party fails to comply with a provision of a decree ... *the obligation of the other party to make payments for support or maintenance ... is not suspended but he may move the court to grant an appropriate order*" (emphasis added).

The judgment of the trial court is affirmed in all respects. Costs divided between the parties.

All concur.