**Sandra L. LOMBARDO, Appellant,**

v.

**Richard J. LOMBARDO, Respondent.**

**No. 55568.**

Missouri Court of Appeals,
Western District.

May 25, 1999.

Kenneth C. Hensley, Esq., Raymore, for Appellant.

Daniel W. Olsen, Esq., Raymore, for Respondent.

Before: Presiding Judge HAROLD L. LOWENSTEIN, Judge PAUL SPINDEN, and Judge VICTOR HOWARD.

LOWENSTEIN, Judge.

Sandra Lombardo (Wife) filed this action for dissolution of marriage against Richard Lombardo (Husband). They were married in 1976. They separated in 1996 after having one child who was then eighteen. Wife appeals, raising four points that relate to maintenance and the division of marital property and allocation of debts.

The court's amended judgment found that Wife needed, and Husband was able to pay, rehabilitative maintenance of $4,000 a month for 120 months, with payment starting after the sale of the marital home. (Wife was to receive maintenance of $1,500 per month until the sale of the house). Maintenance was to terminate upon the death of either party, if Wife remarried, or if Wife co-habitated with a person of the opposite sex for 30 consecutive days. Husband was to obtain and maintain, so long as maintenance was pay-

able, a $250,000 term policy on his life, with Wife as beneficiary. Child support of $1,000 was awarded to be paid directly to the child. The marital home (valued at $274,900 with an outstanding note of $175,-000) was to be sold within 150 days; the proceeds were to be evenly divided. Husband was allowed $25,000 from the home sale to pay a debt. Other marital property, which was ordered to be sold, included a lot next to the marital home ($34,900 less note of $3,000), a lot in Arkansas, a boat and trailer, and a horse. Husband's retirement plan ($40,000) and profit sharing plan ($176,000) was to be equally divided. Stock in husband's company, Kansas City Acute Care Specialists, was awarded to Husband. Husband's income was averaging over $200,000 a year from the business.

■ The standard of review is pursuant to *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The burden of demonstrating error is on the appellant. *Crews v. Crews*, 949 S.W.2d 659, 663—64 (Mo. App.1997). The division of marital property will be reversed only on a division so unduly weighted to one party as to amount to an abuse of discretion. *Id.* Maintenance orders are viewed with the trial court being granted broad discretion. *Id.*

■ Wife's first point asserts the trial court erred as a matter of law in interpreting § 452.370.3, RSMo 1994, to allow it to include language about termination of maintenance if she cohabits with a man for more than thirty consecutive days. The language of the decree stated that Husband shall pay Wife, "as non-modifiable rehabilitative spousal maintenance," $4000 a month for 120 months, and that said "spousal maintenance shall terminate upon the death of either party, the remarriage of the Petitioner [Wife], or the co-habitation of Petitioner with a person of the opposite sex to whom she is not related by blood or marriage for a period of 30 consecutive days." The evidence showed that

after separation, Wife rekindled a relationship with her former husband and in her petition asked for, and was granted, restoration of her former married name. Section 452.370.3 reads: "Unless otherwise agreed to in writing, or expressly provided in the decree, the obligation to pay future statutory maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance."

Although there is a hint this provision may represent a pay-out of a lump sum payment in the division of property in order to make an equitable distribution, the clear language denominates these payments as maintenance and the court will treat the payments as maintenance. *Boettcher v. Boettcher*, 870 S.W.2d 876, 879 (Mo.App.1993).

This point then presents the issue: may a trial court as part of its decree, either under the statutory authority to award maintenance or under the court's equitable powers, include in the decree of dissolution a provision which automatically terminates maintenance (without the necessity of proof via modification hearing on changed financial circumstances of person receiving maintenance (Section 452.370.1, RSMo 1998 Cum.Supp.)), if the recipient cohabits with a person of the opposite sex for more than thirty days? [1]

This issue does not include the situation where the parties settle their dispute on maintenance and the court incorporates the parties' separation agreement that cohabitation terminates maintenance. Section 452.325.1; *Barr v. Barr*, 922 S.W.2d 419, 421 (Mo.App.1996). Section 452.335.1 grants the court authority to award maintenance where the party seeking maintenance does not have sufficient property to provide for their needs and is unable to support the party through appropriate employment, and in subsection .2 then allows the court to consider ten enumerated fac-

---

**1.** All further statutory references will be to the Revised Statutes of Missouri 1994, unless otherwise indicated.

tors in setting the amount and duration of the award.

Wife's reliance on *Henderson v. Henderson*, 746 S.W.2d 99, 101 (Mo.App. 1988) to excise the cohabitation provision from the decree is not conclusive. *Henderson*, unlike the facts in the case at bar, involved a dispute over the portion of a decree dealing with the sale of the family residence upon the cohabitation of the wife who had been granted custody of the child and had been allowed to remain in the family house. This court said such a decretal provision went contrary to the primary consideration, the best interests of the child to be able to remain in the home. The opinion went on to state that "cohabitation is not generally such a permanent relationship as marriage." *Id.* at 101. Indeed, Missouri does not recognize common law marriages. Section 451.040.5. *Whitley v. Whitley*, 778 S.W.2d 233, 238 (Mo.App.1989). Cohabitation of over thirty days does not in and of itself rise to the legal status of marriage. Under § 452.370.3, RSMo Cum.Supp.1998, future maintenance, unless otherwise provided by the parties or the court, is terminated only, "upon the death of either party or the remarriage of the party receiving maintenance." Under the facts in this case, where there was evidence of the Wife asking to take the name of her former husband, and showing an intent to live with him following the dissolution, could the court include in its decree that if the Wife should cohabit for thirty days her monthly maintenance would be terminated?

The two key words of the issue presented, maintenance and cohabitation, involve different matters. Maintenance essentially concerns an economic need. "The concept of maintenance is to provide a spouse with the income necessary to provide for his or her reasonable needs." *Herzog v. Herzog*, 761 S.W.2d 267, 268 (Mo.App. 1988). Cohabitation, however, raises moral and societal issues; it has some of the trappings of a marriage, but without the necessary permanence or certainly the legal status. *Id.* As the court noted in *Herzog*, "[t]he current social trend of nonmarital cohabitation presents a vexing problem where modifications of maintenance are sought," since the spouse receiving support has no new legal right for support from the person living with them, but, "there is a basic unfairness in requiring a prior spouse to continue support of a spouse who has entered into a long term or permanent relationship having some of the benefits of marriage but few of the detriments." *Id.*

Though no Missouri case has squarely addressed dissolution decree language which automatically terminates maintenance where there has been cohabitation for thirty days or more, Judge David Dixon, writing for this court in *Brown v. Brown*, 673 S.W.2d 113, 114–16 (Mo.App. 1984), wrote on the difficulty in dealing with the effect of cohabitation and maintenance. The case involved maintenance in gross where the wife had been living with another man. The *Brown* opinion at page 114 cited contemporary articles in the Journal of Family Law, and at page 115 cited cases from other states, which formed a majority of scholars and courts which held that cohabitation alone was insufficient to modify, suspend, or cause to cease a decree of maintenance. Cases from other states were cited which held there should not be an outright termination, but that a trial court should take evidence "to review the maintenance award in the light of the economic effect of the cohabitation upon the need of the maintenance recipient." *Id.* at 115. The court recognized the difficulties in the majority rule — that the cohabiting parties may make a financial arrangement so that it will appear the spouse receiving maintenance has the same continuing financial need. *Id.* at 114–5. The purpose of the minority view is to eliminate any further maintenance solely on the existence of a cohabiting relationship. *Id.* at 115. This court in *Brown*, and other states which

hold to the majority, point out that a transitory cohabitation will not necessarily alter the capability of a spouse for self-sufficiency. As pointed out earlier in this opinion, the statutory scheme in § 452.335 presents a two-step process for maintenance, subsection one presents the criteria for finding a need, the second lists nine specific criteria, plus "[a]ny other relevant factors" in determining the amount and the duration of maintenance.

This court in *Brown,* and the majority of jurisdictions, held it unwise to automatically hold the second step, of taking evidence and reaching a conclusion of amount and duration, to drop out just because of cohabitation. Under the other relevant factors criteria, and under a trial court's inherent equitable powers, it would seem the best approach to finding a reasonable solution to the grinding together of the economic need for maintenance and the cohabitation of the receiving spouse, would be to formally adopt the majority rule. The procedure under the majority rule would require the paying spouse to first file for a modification pursuant to § 452.370.1, RSMo 1998 Cum Supp., and then establish upon sufficient proof that the cohabiting relationship had caused a substantial and continuing economic change of circumstances sufficient for modification, or even cessation of maintenance. If situations of unmarried cohabitation are alleged to warrant a finding of changed circumstances, trial courts should be allowed to take into account the third party's support of the receiving spouse, and the receiving spouse contributions to the support of the third party. *DePoorter v. DePoorter,* 509 So.2d 1141, 1145 (Fla. App.1987).

■ Rather than focusing solely on cohabitation itself, it seems the best way of formulating rules that dial with cohabita-

tion, is to embrace the rule that the economic implications of cohabitation for the spouse receiving maintenance must be addressed before the maintenance award may be modified, suspended or terminated. *Butts v. Butts,* 906 S.W.2d 859, 863 (Mo.App.1995). This approach still allows the trial court to "evaluate the new relationship created by the spouse receiving maintenance to determine whether equity justifies termination or modification of maintenance on the basis of that changed condition." *Herzog, supra,* 761 S.W.2d at 268. And when the cohabitation has been found by a trial court to have reached a level of permanence sufficient to conclude that the receiving spouse "has abandoned his or her rights to support from the prior marriage and is looking to the new relationship in that regard," then the court, relying on equitable principles, may modify or even terminate the right to maintenance. *Id.* In *Weston v. Weston.* 882 S.W.2d 337, 341 (Mo.App.1994), the trial court's decision to modify rather than terminate maintenance, was affirmed when the evidence showed the wife's cohabiting friend made substantial contributions which decreased her needs on a substantial and continuing basis. A contrary set of facts was contained in *Schloss v. Schloss,* 682 S.W.2d 53, 54 (Mo.App.1984), where the wife "was not supported in any way by the male...." There the court denied the ex-husband's attempt to unilaterally stop maintenance payments.

The effect of cohabitation on a maintenance award is an area the legislature may choose to examine further. Without unduly lengthening this opinion, suffice it to say that the General Assembly may do as several states have done and declare cohabitation sufficient to bar receipt of future maintenance.[2]

---

**2.** l. Weston v. Weston, 882 S.W.2d 337, 339 (Mo.App.1994), presents the states that call for automatic termination as well as those which merely recognize cohabitation as creating a change of circumstances for modification.

2. *Brown v. Brown,* 673 S.W.2d 113, 114 (Tex.App.—El.Paso 1984), lists two articles by Oldham which are cited as 20 J. Fam. L. 615(1982), and 17 J. Fam. L. 249 (1979). *Brown* also lists cases from other jurisdictions. *Id.* at 115.

Even with this common law declaration of requiring or requiring judicial inquiry into the financial implications of cohabitation, the legislature still may choose, as some states have done, to declare that cohabitation of a certain length of time creates a presumption or a rebuttable presumption of a substantial change of circumstances of economic condition.

The provision in the decree of dissolution terminating maintenance if the wife cohabits for more than thirty days, which negates any showing of decreased or lack of economic need by the recipient spouse for maintenance, was not proper.

The Wife's point is sustained.

■ For her second point, Wife asks this court to reverse and remand the portion of the decree requiring Husband to obtain a $250,000 life insurance policy with her as beneficiary. She says the amount of the policy should be in the amount of the maintenance due for ten years—$480,000. There was no requirement compelling the court to order an insurance policy of any certain amount to insure payments for a certain period of time after the Husband's death. Under the scope of review, the court denies this point.

■ The third point concerns payment of a $25,000 Bank 10 debt from the proceeds of the house sale, with the remaining balance divided equally between the two parties. She says this portion of the decree unduly punishes her since it was unclear why this debt was incurred. Husband testified that after the separation there were numerous debts, some incurred before the separation and some after, some incurred by him and some by Wife, all of which required immediate action. He took out this loan to satisfy those obligations. Husband could not testify as to which party incurred each part of the debt, but he said much of the amount owing was based on Wife's charge cards. Although the

court was under no obligation to distribute the debt, charging both parties with this burden out of the sale proceeds was fair, and did not amount to an abuse of discretion. *Carter v. Carter*, 940 S.W.2d 12, 17 (Mo.App.1997).

■ Her final point declares the division of marital property unjust and not supported by substantial evidence. It points to the fact that, of a 21–year marriage where Wife stayed at home and took care of their child as well as raising Husband's daughters from a previous marriage, she came away with little or no income producing property. *Vehlewald v. Vehlewald*, 853 S.W.2d 944, 949 (Mo.App.1993). The law requires a fair and equitable distribution under § 452.330, RSMo 1994. This does not always require an equal distribution. *Marriage of Stuart*, 805 S.W.2d 309, 312 (Mo.App.1991). Here the distribution was equal. The only income producing property in the marital estate was the stock in the husband's business. Unfortunately, the wife's proof as to the value of the business was not allowed in evidence. Husband's evidence of $21,000 was the only evidence of the value of the business. The ultimate distribution of marital property was not so heavily weighted to husband, as to amount to an abuse of discretion. *Bixler v. Bixler*, 810 S.W.2d 95, 100 (Mo.App.1991).

The judgment is reversed and remanded for the sole purpose of eliminating the portion of the decree relating to cohabitation of the wife, but the remaining portion of the judgment is affirmed and is to remain in tact. Costs to be apportioned evenly between the parties.

All concur.

---

3. 98 A.L.R 3rd 453 (1980), along with the pocket part, presents statutes and case law from around the country on a divorced woman's subsequent relations, either standing alone or with other economic circumstances, as warranting modification of a decree.