

# In the
# Missouri Court of Appeals
# Western District

TERRY ANNETTE HOPKINS, )
)
Respondent, ) WD77267
)
v. ) OPINION FILED:
) November 25, 2014
CHARLES DAVID HOPKINS, )
)
Appellant. )

**Appeal from the Circuit Court of Pettis County, Missouri**
The Honorable Paul Beard II, Judge

Before Division Three: Karen King Mitchell, Presiding Judge, Cynthia L. Martin, Judge
and Gary D. Witt, Judge

Charles David Hopkins ("Husband") appeals a trial court judgment denying his motion to terminate his maintenance obligation to Terry Annette Hopkins ("Wife"). Husband argues that the trial court erred (1) by declining to terminate maintenance even though it found that Wife and Robert Naylor ("Naylor") were in a permanent relationship; (2) by failing to terminate maintenance even though Wife was assisting the four people living with her with some of their minor needs; and (3) because the trial court's judgment was against the weight of the evidence and not supported by substantial evidence.

Finding no error in the trial court's judgment, we affirm.

## Factual and Procedural History[1]

Husband and Wife were divorced on December 21, 1998. The divorce decree ordered Husband to pay $1,000 in maintenance to Wife. On June 29, 2001, maintenance was reduced to $489 a month following Husband's motion to terminate his maintenance obligation. On July 12, 2013, Husband filed a second motion to terminate his maintenance obligation. Wife filed a counter motion to modify maintenance, seeking to increase in maintenance to $800 a month.

Wife lives with four other people in the house she received as part of the divorce decree: her 30-year-old daughter, her 9-year-old grandson, her daughter's girlfriend, and Naylor. Along with the maintenance payment from Husband, Wife receives $578 a month in Social Security Disability payments. Her total monthly income is $1,067. Wife does not work on account of her disability. She has $1,155 in monthly expenses, which includes $104 a month that Wife pays toward her daughter's dental bill. Wife does not contribute to Naylor's expenses. Naylor and the other three residents in Wife's home live there rent free. The trial court concluded that at worst this resulted in some additional electrical consumption paid by Wife. Wife's daughter's girlfriend and Naylor each pay their share of Wife's water bill, cable bill, and cell phone bill. No other financial contributions are made to the household expenses. In all other respects, the trial court found that the residents in Wife's home provide for their own support.

---

[1]"We accept as true the evidence and all inferences therefrom that are favorable to the trial court's judgment and disregard all contrary evidence." *Haynes v. Almuttar*, 25 S.W.3d 667, 671 (Mo. App. W.D. 2000) (internal citation omitted).

Naylor has been living with Wife in the house for about six years. Each said that they "guess" they are living as husband and wife, but the trial court found that their relationship is more akin to roommates who have agreed to have sex. The two do not share a bedroom, do not commingle their finances, share no bank accounts or credit card accounts, and have no present intent to get married. The two had discussed marriage a couple of times but Naylor does not believe in marriage. The trial court found that cohabitation with Naylor "provides [Wife] emotional support but no financial support." Other than Naylor's payment of his share of the water, cable and cell phone bills, Naylor has not contributed financially to Wife. There was no evidence that Wife or Naylor have provided for each other in their respective wills or named each other on any insurance policies.

Naylor works as a mechanic for a local business. Payroll records show that in 10 months in 2013, Naylor received $23,173.82 in net income. Naylor said he has monthly expenses of $1,629.29, which includes roughly $400 in medical and prescription drug costs. Naylor also has had recurring back problems that could affect his ability to work in the future.

Husband works as a maintenance man for a local company. Husband submitted that he makes $2,000 a month in net income, his wife receives $1,891 a month in Social Security Disability payments, and he has $4,404 in average monthly expenses. Husband said he wanted to eliminate his maintenance obligation both to make repairs to his home and to save money so he can retire.

Following a hearing, the trial court entered a judgment denying Husband's motion to terminate his maintenance obligation and Wife's cross-motion seeking to increase maintenance ("Judgment").[2]

Husband appealed, alleging three points of error.

**Standard of Review**

"Our review of a ruling on a motion to modify maintenance is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)." *Almuttar*, 25 S.W.3d at 671. The trial court's judgment will be affirmed "unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Id.* "We give deference to the trial court's greater opportunity to judge the credibility of witnesses and the weight given opinion evidence." *Id*. The trial court "may believe or disbelieve all, part, or none of the testimony of any witness." *Butts v. Butts*, 906 S.W.2d 859, 861 (Mo. App. S.D. 1995). "The trial court is given considerable discretion as to the allowance and the amount of maintenance payments, and it is the appellant's burden on appeal to demonstrate an abuse of that discretion." *Almuttar*, 25 S.W.3d at 671. "We will defer to the trial court even if the evidence could support a different conclusion." *Sprouse v. Sprouse*, 969 S.W.2d 836, 838 (Mo. App. W.D. 1998).

**Point One**

In his first point on appeal, Husband argues that the trial court erred in denying his motion to terminate maintenance because Wife and Naylor are in a permanent

---

[2]For reasons not explained by the record, the Judgment is titled "Judgment of Dissolution of Marriage." Plainly, the Judgment does not dissolve the parties' marriage, but instead ruled on the parties' competing motions to modify maintenance.

4

relationship requiring the termination of maintenance as a matter of law without regard to the financial support Naylor actually provides Wife.

"Section 452.370.1 authorizes a court to modify maintenance upon a showing of changed circumstances so substantial and continuing as to make the terms of the original decree unreasonable." *Brooks v. Brooks*, 957 S.W.2d 783, 786 (Mo. App. W.D. 1997). Section 452.370.1[3] provides in pertinent part:

> In a proceeding for modification of any child support or maintenance judgment, the court, in determining whether or not a substantial change in circumstances has occurred, shall consider all financial resources of both parties, including the extent to which the reasonable expenses of either party are, or should be, shared by a spouse or other person with whom he or she cohabits . . . .

"As the party seeking modification, [Husband] bears the burden of proving the changed circumstances." *C.K. v. B.K.*, 325 S.W.3d 431, 434 (Mo. App. E.D. 2010).

Here, the trial court's Judgment characterized Wife's relationship with Naylor as "permanent," and acknowledged that the cohabitation relationship had "taken on the permanence of marriage." The trial court concluded, however, that it was nonetheless required by law to consider the economic implications of cohabitation before it could find that a substantial change in circumstances had occurred warranting modification of Husband's maintenance obligation. The trial court found although Wife "is cohabitating, . . . the relationship lacks a commitment or agreement to support each other financially, which is an obligation of marriage." The trial court expressly found that the cohabitation provides Wife "no financial support." The trial court thus found that "[Wife] is in need of

[3]All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

maintenance and [Husband] continues to have the ability to pay maintenance." In effect, the trial court found that Husband did not sustain his burden to establish a substantial change in circumstances requiring the modification of his maintenance obligation.

Husband argues that this conclusion was in error as a matter of law, and that once the trial court found Wife and Naylor to be in a permanent relationship, it was bound to terminate maintenance, irrespective of financial support received by Wife as a result of the permanent relationship. Husband relies on *Herzog v. Herzog*, 761 S.W.2d 267 (Mo. App. E.D. 1988), in support of this proposition. *Herzog* provides in pertinent part:

> Where the relationship has achieved a permanence sufficient for the trial court to conclude that it has become a substitute for marriage, equitable principles warrant a conclusion that the spouse has abandoned his or her rights to support from the prior marriage and is looking to the new relationship in that regard. Permanence may be found from either the time involved or the intentions of the persons involved. . . . Where a permanent relationship exists . . . the level of support obtained therefrom is, as with remarriage, irrelevant.

*Id*. at 268-69.

Husband's reading of *Herzog* is mistaken. To find a substantial change in circumstances warranting modification of maintenance based on cohabitation, *Herzog* requires the evidence to support the conclusion that the relationship is of a nature that it substitutes as a marriage. Though *Herzog* acknowledges that evidence regarding the amount of time parties have cohabited and their future intentions will be relevant to this inquiry, *Herzog* does not hold that the extent of financial support provided is irrelevant to this inquiry. In fact, *Herzog* directs that rules and principles of equity must be followed to determine the rights and obligations of the parties, which in turn requires an evaluation

6

of "the new relationship created by the spouse receiving maintenance to determine whether equity justifies termination or modification of maintenance . . . ." *Id.* at 268. Only where the evidence establishes that a cohabitation relationship substitutes as a marriage does *Herzog* direct that the *level* of financial support becomes immaterial to the decision to terminate maintenance.

This construction of *Herzog* is verified by the result reached in that case. *Herzog* declined to find a permanent relationship that was a substitute for marriage, and thus declined to modify maintenance, even though the spouse receiving maintenance admitted to cohabiting for a year with a man who earned a respectable wage but contributed nothing financially to the household. 761 S.W.2d at 268-69. The Eastern District pointed to the short duration of the relationship, to that fact that neither the wife nor cohabitant viewed the relationship as permanent, to the fact that no evidence showed the wife had incurred additional expenses due to the cohabitation or that she spent any of her money on behalf of the cohabitant, and to undisputed evidence that the cohabitant did not provide the wife with financial support. *Id.* at 269. Plainly, in addressing the threshold question of whether cohabitation constituted a substantial change in circumstances because the relationship substituted for marriage, *Herzog* relied on evidence involving the financial support provided between the cohabitants.

Our construction of *Herzog* is also verified by later decisions addressing whether cohabitation warrants a modification of maintenance. In *Lombardo v. Lombardo*, 992 S.W.2d 919 (Mo. App. W.D. 1999), (the case cited and relied on by the trial court in its Judgment), we held that "[r]ather than focusing solely on cohabitation itself, it seems the

7

best way of formulating rules that [deal] with cohabitation, is to embrace the rule that the economic implications of cohabitation for the spouse receiving maintenance must be addressed before the maintenance award may be modified, suspended or terminated." *Id.* at 923. "This approach still allows the trial court to 'evaluate the new relationship created by the spouse receiving maintenance to determine whether equity justifies termination or modification of maintenance on the basis of that changed condition.'" *Id.* (quoting *Herzog*, 761 S.W.2d at 268).

Later cases have similarly applied *Herzog* to find that cohabitation, in and of itself, did not warrant a modification of maintenance.[4]

Although the trial court characterized the relationship between Wife and Naylor as "permanent," it also effectively found that the relationship was not a substitute for marriage. The trial court found that "the relationship lacks a commitment or agreement to support each other financially, which is an obligation of marriage." The trial court did not misapply the law when, based on this finding, it held that Husband was not entitled to terminate his maintenance obligation.

---

[4]*See Weston v. Weston*, 882 S.W.2d 337 (Mo. App. S.D. 1994) (finding no permanent relationship despite recipient and cohabitant living together for three years, sharing the same bed, having an exclusive sexual relationship, and cohabitant paying some of the household expenses because cohabitant had no intention of marrying recipient, recipient had not provided for cohabitant in her will, and neither the cohabitant nor the recipient made a commitment to the other); *Butts v. Butts*, 906 S.W.2d 859 (Mo. App. S.D. 1995) (finding no permanent relationship existed because even though recipient and cohabitant lived in same house for two to three years, had been sexually intimate, and cohabitant made a commitment to recipient for rest of his life, the two never helped each other financially except for sharing living expenses, did not commingle their funds, did not provide for each other in the event of either's death, and no evidence was elicited regarding the recipient spouse's intentions to the relationship with the cohabitant); *C.K. v. B.K.*, 325 S.W.3d 431 (Mo. App. E.D. 2010) (finding permanent relationship not a substitute for marriage under *Herzog* despite recipient and cohabitant having a child together and intending to remain in the permanent relationship because the two did not hold themselves out as married, had no present intent to get married, and did not commingle finances or hold any joint bank accounts or credit cards).

Husband additionally argues that section 452.370.1 was amended after the decision in *Herzog,* requiring evaluation not just of the actual contributions made by a cohabitant, but also the amounts that "should be, shared by a spouse or other person with whom he or she cohabits." Husband thus argues that even presuming the determination of permanence permits exploration of financial support afforded between cohabiting parties, the trial court erred in requiring proof of actual financial support. We disagree.

The trial court found that the only potential cost being incurred by Wife attributable to Naylor's (and other cohabitants') residing at her home that was not being reimbursed was an increase in electrical consumption. The trial court also found that:

> [Wife] is deliberately sacrificing minor comforts that would be appropriate under a minimum standard of living to assist her four cohabitants with some of their minor needs. However, these offerings on her part do not merit a termination of the maintenance order. A person receiving maintenance may help others within reason without risking termination of the maintenance on the argument that the person paying maintenance is being forced to support others.

In addition, the trial court found that although Wife could charge rent, "there is no obligation that a person receiving maintenance rent out the rooms of her/his house in order to avoid termination of the maintenance." The trial court plainly did consider, therefore, whether there were reasonable expenses that Wife's cohabitants "should" be paying, and determined that there were none warranting modification of maintenance. Husband does not challenge these findings. His argument that the trial court erroneously failed to consider reasonable expenses that "should" be paid by a cohabitant is plainly without merit.

9

The trial court did not abuse its discretion and did not erroneously determine or apply the law by declining to terminate Husband's maintenance obligation.[5]

Point one is denied.

## Point Two

In his second point on appeal, Husband argues that the trial court erred in denying his motion to terminate maintenance even though it declared that Wife was assisting her four cohabitants with some of their minor needs. Specifically, Husband argues that termination of his maintenance obligation was required because Wife cannot use maintenance to provide any support to her cohabitants.

As stated above, Husband, as the party seeking modification of a maintenance award, bears the burden to demonstrate changed circumstances "so substantial and continuing as to make the terms of the original [maintenance] decree unreasonable." *Brooks*, 957 S.W.2d at 786; section 452.370.1. "As a general rule, a substantial and continuing change in circumstances is one that renders the obligor unable to pay maintenance at the assigned rate or one that allows the recipient to meet his or her reasonable needs with less maintenance." *Lee v. Gornbein*, 124 S.W.3d 52, 56 (Mo. App. W.D. 2004).

---

[5]We do acknowledge that the court in *Lombardo* suggested to the legislature that: "The effect of cohabitation on a maintenance award is an area the legislature may choose to examine further. Without unduly lengthening this opinion, suffice it to say that the General Assembly may do as several states have done and declare cohabitation sufficient to bar receipt of future maintenance." 992 S.W.2d at 923. Consistent with this refrain, the trial court in its Judgment called "upon the legislature to re-evaluate the state's maintenance laws to address the current realities of family formation and define clearly when co-habitation should result in a termination of maintenance and when it should not." Both *Lombardo* and the trial court recognize that such a decision is within the province of the legislature and not the courts. Unless and until the legislature heeds these calls, we are bound to apply the law as written, notwithstanding Husband's effort in this case to recast prior appellate determinations to require termination of maintenance based solely on cohabitation.

Husband argues that the trial court erred by ruling that Wife could use some of the maintenance payment she receives each month to support the other people living in her house. To support this argument, Husband cites *Nichols v. Nichols*, 14 S.W.3d 630, 636-37 (Mo. App. E.D. 2000) (finding that expenses to support emancipated children or grandchildren are not properly includable in *determining* maintenance) and *Gerecke v. Gerecke*, 954 S.W.2d 665, 669 (Mo. App. S.D. 1997) (finding maintenance payments must be limited to the needs of the party *requesting* support) (emphasis added). Husband's reliance on these principles is misplaced because the rules outlined *Nichols* and *Gerecke* apply when a trial court is deciding whether to order maintenance upon dissolution of marriage, not when a trial court is deciding whether to terminate an existing maintenance order.

When an initial request for maintenance is made in a dissolution proceeding, a trial court is required to weigh the factors outlined in section 452.335, which "speaks solely in terms of whether the requesting party lacks sufficient property to meet 'his' reasonable needs, and whether that party is able to support 'himself' through appropriate employment." *Nichols*, 14 S.W.3d at 637. When a request for modification occurs, a trial court is only required to consider whether there has been a change of circumstances "so substantial and continuing as to make the terms of the original [maintenance] decree unreasonable." *Brooks*, 957 S.W.2d at 786. "In determining the amount to award for maintenance in a modification proceeding under section 452.370, the trial court may, but is not required to, consider the factors found in section 452.335, just as if the trial court was determining an original maintenance award." *Id.* As such, the trial court here was

11

free, but not required, to consider whether any financial support given by Wife to the other people living with her constituted such a substantial and continuing change as to warrant Husband's current maintenance obligation unreasonable.

The only direct evidence of Wife providing financial support to any of the people living in her house was her acknowledgment that she pays $104 a month toward her Daughter's dental bills. Beyond the dental payments, the court found only that Wife was sacrificing her own minor comforts to "assist her four cohabitants with some of their minor needs," and that Wife had no obligation to rent out rooms in her home to avoid termination of maintenance. We cannot say that Wife's decision to assist her cohabitants with some of their minor needs constituted such a substantial and continuing change of circumstances that Husband's maintenance obligations should have been terminated.

Point two is denied.

### Point Three

In his third point on appeal, Husband argues that the trial court erred in denying his motion to terminate maintenance because its ruling was against the weight of the evidence *and* not supported by substantial evidence. (Emphasis added.) Specifically, Husband argues that the trial court's ruling to deny termination of maintenance despite finding a permanent relationship between Wife and Naylor, along with declining to find that Naylor "should be" helping wife pay her reasonable expenses pursuant to section 452.370.1, was against the weight of the evidence and not supported by substantial evidence.

12

We note at the outset that "'against-the-weight-of-the-evidence' challenges are not the same as 'not-supported-by-substantial-evidence' challenges; hence, pursuant to Rule 84.04, these separate and distinct challenges should have been separated into two distinct points relied on." *Sauvain v. Acceptance Indem. Ins. Co.*, 437 S.W.3d 296, 299 n.1 (Mo. App. W.D. 2014). "Generally, multifarious points preserve nothing for appellate review and are ordinarily subject to dismissal." *Id.* (internal quotation omitted). Even though Husband's point relied on is defective, we will review the point *ex gratia*.

"A claim that there is no substantial evidence to support the judgment or that the judgment is against the weight of the evidence necessarily involves review of the trial court's factual determinations." *Pearson v. Koster*, 367 S.W.3d 36, 43 (Mo. banc 2012). "A court will overturn a trial court's judgment under these fact-based standards of review only when the court has a firm belief that the judgment is wrong." *Id.* "In reviewing questions of fact, the appellate court defers to the trial court's assessment of the evidence if any facts relevant to an issue are contested." *Sauvain*, 437 S.W.3d at 303.

> An appellant who brings an against-the-weight-of-the-evidence challenge must:
>
> (1) identify a challenged factual proposition necessary to sustain the judgment; (2) identify all of the favorable evidence supporting that position; (3) identify contrary evidence, subject to the trial court's credibility determinations, explicit or implicit; and (4) prove in light of the whole record that the supporting evidence, when considered along with the reasonable inferences drawn therefrom, is so lacking in probative value that the trier of fact could not reasonably believe the proposition.

*Id.* at 304. This challenge assumes the "existence of substantial evidence supporting a proposition necessary to sustain a judgment, but, nevertheless, challenges the probative

value of that evidence to induce belief in that proposition when viewed in the context of the entirety of the evidence before the trier of fact." *Id.* (internal quotation omitted).

Husband has not properly brought an against-the-weight-of-the-evidence challenge because he has not identified the finding necessary to sustain the judgment.[6] Husband only briefly identifies some of the favorable evidence that supports the trial court's judgment and also does not show, in light of the whole record, that the trial court's judgment was so lacking in probative value that it was unreasonable. Most of husband's argument centers on evidence contrary to the trial court's judgment, ignoring that we defer "to the trial court's assessment of the evidence if any facts relevant to an issue are contested." *Id.* at 303. In any event, evidence was presented at trial that supported the trial court's judgment. Naylor did not provide financial assistance to Wife, Wife did not provide financial assistance to Naylor, Naylor was barely self-sufficient himself, and Naylor suffered from physical ailments that could affect his long-term ability to work. Naylor also had no intention of marrying Wife, the two did not commingle their funds, and no evidence was elicited from Wife that revealed her intentions as to the permanence of her relationship with Naylor.

Husband's not-supported-by-substantial-evidence challenge suffers from similar problems. An appellant who brings a not-supported-by-substantial-evidence challenge must:

---

[6]This finding is the factual proposition that Wife and Naylor were not in a permanent relationship sufficient to show that Wife abandoned her right to maintenance and that Naylor did not contribute financially, or have the financial resources to contribute financially, to Wife.

(1) identify a challenged factual proposition necessary to sustain the judgment; (2) identify all of the favorable evidence supporting that position; and (3) demonstrate why that supporting evidence, when considered with the reasonable inferences drawn therefrom, is so lacking in probative value that the trier of fact could not reasonably believe the proposition.

*Id.* "Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of fact[ ] can reasonably decide the case." *Id.* (internal quotation omitted).

Husband has not properly argued a not-supported-by-substantial-evidence challenge because he only briefly mentions some of the favorable evidence supporting the trial court's judgment and instead spends substantially all of his argument referencing contrary evidence. "[A]ny citation to or reliance upon evidence and inferences contrary to the judgment is irrelevant and immaterial to an appellant's point and argument challenging a factual proposition necessary to sustain the judgment as being not supported by substantial evidence." *Id.* (internal quotation omitted).

While Husband has pointed to evidence that might have supported a conclusion contrary to the trial court's judgment, the conclusion argued by Husband is not the only conclusion that the trial court could have reached. "Instead, accepting as true the foregoing evidence and inferences from it that are favorable to the judgment, we conclude the trial court's judgment is supported by substantial evidence and is not against the great weight of the evidence." *Id.* at 306.

Point three is denied.

15

## Conclusion

The trial court's judgment in affirmed.


_Cynthia L. Martin_____
Cynthia L. Martin, Judge


All concur.