

# In the Missouri Court of Appeals
# Eastern District

**DIVISION THREE**

| | | |
|---|---|---|
| CAROL A. CULLEN, | ) | No. ED111233 |
| | ) | |
| Respondent/Cross-Appellant, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | 08SL-DR05180-02 |
| | ) | |
| ROBERT H. BERNSTEIN, | ) | Honorable Heather R. Cunningham |
| | ) | |
| Appellant. | ) | Filed: May 28, 2024 |

Before Lisa P. Page, P.J., Gary M. Gaertner, Jr., J., and Angela T. Quigless, J.

Robert H. Bernstein (Bernstein) appeals and Carol A. Cullen (Cullen) cross appeals from the St. Louis County Circuit Court's judgment of modification, which reduced Bernstein's maintenance obligation from $10,000 to $5,000 per month and ordered Cullen to pay $25,000 of his attorney fees. We reverse.

## Background

Bernstein and Cullen were married in November 1982. In March 2010, the court entered a consent judgment of dissolution. Relevant to this appeal, Bernstein agreed to pay Cullen $10,000 per month in modifiable maintenance. In March 2020, Bernstein filed a motion to modify the judgment of dissolution, asking the court to terminate or in the alternative substantially reduce his maintenance obligation. Specifically, Bernstein pled that the following substantial and continuing changes rendered the original terms of maintenance unreasonable:

(a) That [Cullen] has failed to make a good-faith effort to seek and/or maintain employment so as to achieve financial independence within a reasonable time after the date of the parties' dissolution of marriage;

(b) That since the entry of the Judgment, [Cullen] has been under a continuing duty to exert reasonable efforts to attain self sufficiency and has failed to carry out her aforesaid duty;

(c) That, upon information and belief, since the entry of the Judgment, [Cullen's] assets have substantially increased and the amount of income that [Cullen] does receive, or should receive, from said assets has substantially increased;

(d) That [Cullen] has been cohabitating with a male individual for several years, not her husband, wherein [Cullen's] relationship has achieved sufficient permanence to indicate it is actually a substitute for marriage and, therefore, [Cullen's] right to receive support from [Bernstein] has been abandoned; and

(e) That, upon information and belief, the male individual with whom [Cullen] cohabits shares [Cullen's] expenses and/or [Cullen] contributes to the male individual's expenses.

Bernstein's petition made no claims regarding a substantial and continuing change in his circumstances such that his payment of maintenance was unreasonable. In fact, Bernstein's statements of income and expense show that his net monthly income had nearly doubled from an average of $30,632 at the time of the dissolution in 2010 to $59,374 at trial in April 2022.

On August 2, 2022, the court issued its findings of fact, conclusions of law, and judgment of modification. Both parties filed motions to amend the judgment. On November 20, 2022, the court issued an amended judgment reducing Bernstein's maintenance obligation to $5,000 per month and ordering Cullen to pay $25,000 of Bernstein's attorney fees. This appeal follows.

## Discussion

Bernstein raises three points on appeal and Cullen asserts six points on cross appeal. In his first point on appeal, Bernstein claims the court erred in refusing to terminate his maintenance obligation to Cullen because she was able to meet her reasonable needs with her net income and was no longer in need of maintenance. In his second point, Bernstein argues the court erred in refusing to terminate his maintenance obligation because based upon the indicia of permanency, Cullen's current relationship was a sufficient substitute for marriage resulting in an abandonment of her right to receive maintenance. In his third and final point on appeal,

2

Bernstein argues the court erroneously awarded him only $25,000 in attorney fees, and the amount should have been increased.

Cullen filed a cross appeal consisting of six points. In points one through four of her cross appeal, Cullen argues that the court misapplied the law in its judgment modifying maintenance. In point one she challenges that finding that Cullen is required to sell the home awarded to her in the dissolution to reduce her monthly expenses and obtain additional monthly income. In point two, Cullen alleges the court improperly imputed income from Cullen's assets which were awarded to her in the original dissolution. Point three on cross appeal alleges error in the court's determination that income imputed to Cullen regarding her potential employability supported a finding of substantial and continuing change of circumstances when income had previously been imputed at the time of dissolution. In point four, Cullen argues the court improperly determined her relationship constituted a substitute for marriage. Point five alleges this finding was also against the weight of the evidence. In her sixth and final point on cross appeal, Cullen claims the court abused its discretion in ordering her to pay $25,000 of Bernstein's attorney fees because the decision was not supported by evidence that Cullen caused unnecessary delay and expense in her defense against Bernstein's motion to modify maintenance.

We agree with Cullen and grant cross appeal points one, two, three, four, and six. We decline to review point five because point four is dispositive of the same issue. We decline to review Bernstein's first point on appeal that Cullen's maintenance should be terminated because in granting Cullen's points on cross appeal we find the court erred as a matter of law in even reducing, much less terminating, his maintenance obligation because he did not meet the statutory burden of proof to show a substantial and continuing change in Cullen's financial circumstances. We deny his points two and three.

Upon summary of these points on appeal and cross appeal, we respectfully note Bernstein has not requested the relief the dissent would grant him because he claims the trial court erred by refusing to terminate his maintenance obligation. While we agree that Cullen failed to meet her affirmative duty to make a good faith effort to become employed and self-supporting, which could result in modification, this issue is not raised in any of the nine points on appeal. Thus, a remand to modify maintenance for this reason is improper. As Cullen's affirmative duty is related to her third point on cross appeal regarding imputation of her income, we will address the dissent's concerns in that point.

### Standard of Review

Our review of the court's judgment regarding modification of maintenance is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Hopkins v. Hopkins*, 449 S.W.3d 793, 797 (Mo. App. W.D. 2014). Thus, we will affirm the judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or the court erroneously applies or declares the law. *Id*.

All but points four and six of Cullen's cross appeal allege that the court misapplied the law. When considering whether the court misapplied the law, we review the court's legal conclusions and application of law to the facts *de novo*. *McLeod v. McLeod*, 681 S.W.3d 215, 228-29 (Mo. App. W.D. 2023). With respect to questions of law, we conduct an independent review, without deference to the court's conclusions. *T.J.W. v. K.T.*, 614 S.W.3d 637, 640 (Mo. App. S.D. 2020). A misapplication of the law constitutes reversible error if it materially affects the merits of the action such that we have a firm belief the judgment is wrong. *McLeod*, 681 S.W.3d at 229.

4

*Analysis*

Pursuant to Section 452.370.1 RSMo (2016),[1] maintenance may be modified only "upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable." Section 452.370 imposes a strict standard for modification to discourage persistent or insubstantial motions to modify. *Eaton v. Bell*, 127 S.W.3d 690, 694 (Mo. App. W.D. 2004). The party moving to modify maintenance bears the burden of proving a substantial and continuing change of circumstance which renders the original award unreasonable. *Lindo v. Higginbotham*, 517 S.W.3d 558, 562 (Mo. App. E.D. 2016). "To warrant modification, the change in circumstances must involve a departure from prior known conditions, including those known at the time of dissolution." *Shanks v. Shanks*, 117 S.W.3d 718, 721 (Mo. App. E.D. 2003) (internal citation omitted). Thus, the change must be unknown and unforeseeable at the time of the original award of maintenance the spouse seeks to modify. *Rustemeyer v. Rustemeyer*, 148 S.W.3d 867, 871 (Mo. App. E.D. 2004); *see also Wagner v. Wagner*, 542 S.W.3d 334, 339 (Mo. App. E.D. 2017). These legal principles guide our review of the court's legal conclusion that Bernstein "met his burden of proving that a change in [Cullen's] circumstances so substantial and continuing, has occurred since the parties' dissolution of marriage" to merit reducing his maintenance obligation.

### A Cautionary Tale and Best Practices

Before we reach the merits of any points raised in this appeal, we must address allegations of error by both parties that the court's judgment contains contradictory findings. At oral argument, even as counsel for Bernstein complained the court's judgment impermissibly "split the baby" producing an "absurd result" because the evidence did not support a maintenance award of $5,000 per month, he conceded the "majority" of the voluminous

---

[1] All further statutory references are to RSMo (2016).

5

judgment was taken directly from his proposed findings of fact and conclusions of law.[2]  This concession provides a reasonable explanation for the problematic findings and why the court may have ruled as it did.  While we agree with his argument the result is incorrect and the court was, in fact, attempting to act equitably by "splitting the baby," we find the "absurd result" was in reducing Bernstein's maintenance obligation as a matter of law because he did not meet his statutory burden to prove a substantial and continuing change in Cullen's circumstances which must be strictly enforced.  *Eaton*, 127 S.W.3d at 694.

We find in addition to impermissibly reducing Bernstein's maintenance obligation, the initial judgment issued on August 2, 2022, both terminated maintenance in one section and reduced maintenance in another.  The court issued its amended judgment following post-trial motions and redacted the provision terminating maintenance.  However, the amended judgment still contained multiple puzzling findings to *inter alia* include:  the dichotomous finding that Cullen "does not have sufficient income producing property or income to meet her reasonable needs" and as such needs maintenance, but in the same paragraph finding she has a "surplus" of income after paying her reasonable expenses; accepting two different findings of income imputed to Cullen; and finding Cullen's relationship was a substitute for marriage absent any findings of any specific financial benefit to Cullen.  There was also discussion of Bernstein's mental and physical health issues which were not relevant to the modification as pled.  Finally, the court also issued contradictory findings regarding attorney fees, by referring to the fact the parties' financial resources was a relevant factor to be considered, but then stating Cullen's pursuit of "irrelevant issues, such as [Bernstein's] financial position" increased his fees.

---

[2] The parties each submitted certificates of service evidencing their proposed judgments were submitted via email to the judge and opposing party, but they were not made part of the record in the circuit court, and thus, are not part of the record on appeal.  In today's e-filing world there is no excuse for this omission which hinders meaningful appellate review.

The adoption of a party's proposed findings of fact and conclusions of law is not *per se* reversible error. *Neal v. Neal*, 281 S.W.3d 330, 337-38 (Mo. App. E.D. 2009) (internal quotation omitted). However, a court may abuse its discretion by adopting such a faulty proposed judgment if the findings indicate a lack of judicial consideration. *Id*. at 338. Therefore, we strongly caution against this practice and encourage trial judges to approach every proposed judgment – especially one so self-serving as Bernstein's – with the "sharp eye of a skeptic" and an even sharper "pencil of an editor." *Id*. at 337 (quoting *Nolte v. Wittmaier*, 977 S.W.2d 52, 57 (Mo. App. E.D. 1998) (quoting *Massman Constr. Co. v. Mo. Highway & Transp. Comm'n*, 914 S.W.2d 801, 804 (Mo. banc 1996)).

## Relationship as Substitute for Marriage

In his second point on appeal, Bernstein argues the court erred in failing to terminate his maintenance obligation because Cullen's relationship was a sufficient substitute for marriage and she abandoned her right to receive maintenance. Cullen also argues on cross appeal that the court misapplied the law in determining her relationship constituted a substitute for marriage. Thus, as a threshold question, we address the points concerning the court's findings regarding Cullen's relationship first.

Pursuant to Section 452.370.3, unless otherwise agreed or provided for in the judgment, "maintenance is terminated upon the . . . remarriage of the party receiving maintenance." There is no question Cullen has not remarried; however, Bernstein attempts to rely on a judicially created remedy under which a party's relationship can achieve sufficient permanence to constitute a substitute for marriage such that Cullen abandoned her right to maintenance. *Herzog v. Herzog*, 761 S.W.2d 267, 268 (Mo. App. E.D. 1988).

The *Herzog* court created an equitable remedy to address the "basic unfairness" of requiring a prior spouse to continue to provide financial support to a party who has entered into a

7

long-term or permanent relationship.  *Id*. at 268.  Even though the relationship at issue did not merit such equitable relief, the court held that if a relationship has achieved a permanence sufficient to become a substitute for marriage, "equitable principles warrant a conclusion that the spouse has abandoned his or her rights to support from the prior marriage."  *Id.*

This judicially-created doctrine has been examined and further clarified in subsequent cases.  Specifically, in *Hopkins v. Hopkins*, the court held, "[p]lainly, in addressing the threshold question of whether cohabitation constituted a substantial change in circumstances because the relationship substituted for marriage, *Herzog* relied on *evidence involving the financial support provided between the cohabitants*."  449 S.W.3d 793, 799 (Mo. App. W.D. 2014) (emphasis added).  Like *Herzog*, the relationship at issue in *Hopkins* was not deemed a substitute for marriage even though they cohabitated for approximately six years, because he did not contribute a financial benefit to her, they did not commingle finances, did not share any bank accounts or credit cards, were not named on any insurance policies, and were not provided for in their respective wills.  *Id*. at 797.  Thus, the lack of financial support did not warrant termination of maintenance.  *Id*. at 800; *see also C.K. v. B.K.*, 325 S.W.3d 431, 435 (Mo. App. E.D. 2010) (evidence of cohabitation and having a child together did not reach level of substitute for marriage warranting termination of maintenance where there was no evidence mother and partner commingled finances, had joint bank accounts or credit cards, or were named as beneficiaries in insurance or wills).

We considered this issue most recently in *Main v. Main*, 685 S.W.3d 620, 624-30 (Mo. App. E.D. 2024).  In *Main*, wife and her son moved into her partner's home, both parties had tattoos referencing their relationship, each paid a share of the household expenses, they held a joint credit card, jointly owned an LLC which held the mortgage on two condominiums, and jointly held a bank account for the LLC.  *Id.* at 624.  However, even in light of these significant

8

facts, the evidence did not support a finding the relationship was a substitute for marriage to merit termination of maintenance. *Id*. at 630.

In the thirty-six years since the *Herzog* court created this equitable remedy, the parties cite and our research reveals only one case in which a court held there was sufficient evidence of permanency and financial co-dependence to support a determination that the relationship was indeed a substitute for marriage to terminate maintenance. In *Taormina v. Taormina*, the parties lived together for over a decade; shared the expenses of building their home; wife's partner provided her with expensive gifts and extensive travel; he attended and planned life events involving wife's family, including the wedding of her daughter by adding his name to the invitation, contributing financially, and participating in a father-daughter dance. 639 S.W.3d 482, 490-91 (Mo. App. W.D. 2021). Wife's partner also employed her and gave her benefits such as health insurance, cell phone, a company car, and company credit card. *Id*. at 491. In addition, wife named her partner as a beneficiary of her trust. *Id*. Based upon this considerable evidence, the Western District held the wife's cohabitation and sharing of expenses constituted a sufficient change of circumstances to render the original award of maintenance unreasonable and merit termination. *Id*.

Here, Cullen and R.H. testified they have a romantic relationship, have spent time with each other's family members, travel extensively together, and R.H. has a tattoo of Cullen's name on his hand. Importantly, in their unrefuted testimony both Cullen and R.H. asserted they do not cohabitate and each maintains their own separate residence. While they share travel expenses and give each other gifts from time to time, they claimed they do not maintain any joint bank accounts, credit cards, neither is a beneficiary of the other for purposes of any insurance or estate planning, and neither contributes to the other's household expenses.

9

While the court could find Cullen and R.H.'s testimony not credible, Bernstein still had to present some evidence of a financial benefit to Cullen in order for her relationship to be considered a substitute for marriage. However, he produced nothing that bears any resemblance to the facts of *Taormina* to establish the necessary indicia of permanency and result in an equitable finding that Cullen abandoned her right to receive maintenance from Bernstein. In fact, the court's own extensive, albeit contradictory findings regarding Cullen's income and expenses reflect zero financial contribution from R.H. and conclusively refute any contrary finding of a meaningful financial benefit to Cullen from the relationship.

Therefore, the court misapplied the law in its determination that the relationship "is, in fact, a substitute for marriage," under the equitable principles set forth in *Herzog* and its progeny. As a result, Bernstein's second point on appeal is denied and Cullen's point on cross appeal is granted.

### Cullen's Income

In her cross appeal, Cullen asserts the court made multiple legal errors in determining her net monthly income. We agree, and grant Cullen's points one, two, and three on cross appeal.

In her first point, Cullen argues the court misapplied the law in finding she should sell her home or pay off her mortgage to somehow increase her income to create a substantial and continuing change in her financial circumstances to modify Bernstein's maintenance obligation. In its judgment, the court deducted Cullen's expenses for her "mortgage, association fees, yard maintenance, and home repairs," as not reasonable based on her purported testimony she "had the ability to pay off the mortgage" on her residence. This is both a misapplication of law and mischaracterization of Cullen's testimony.

It is well-settled that a spouse is not required to deplete assets awarded in a dissolution to be entitled to maintenance, nor is the spouse required to consume his or her apportioned share of

10

marital property to retain an award of maintenance. *Lindo*, 517 S.W.3d at 563 (internal citations omitted); *Leslie v. Leslie*, 827 S.W.2d 180, 183 (Mo. banc 1992). However, here the court made numerous speculative findings to increase Cullen's income premised upon just such a depletion of "her apportioned share of marital property." This finding to support a reduction in Bernstein's maintenance obligation was a clear misapplication of law because it placed Cullen in the untenable position of depleting either her home or investment assets which the law does not permit. Furthermore, the judgment mischaracterized Cullen's testimony. Her testimony regarding her home was that she was comfortable there and enjoyed its location. She never said she could pay off her mortgage or sell her home, thereby reducing her assets. In fact, the only asset Cullen testified she "could" have paid the balance of was her vehicle.

The court's finding of a substantial and continuing change of circumstances regarding Cullen's income and expenses erroneously required her to either pay off or sell her home, thus depleting one asset or another awarded to her in the dissolution to arrive at a highly speculative income. Point one of Cullen's cross appeal is granted.

In her second point on cross appeal, Cullen argues the court misapplied the law in reducing maintenance based upon improperly imputing income from assets awarded to her in the dissolution. In 2010, when Bernstein agreed to pay Cullen $10,000 per month in maintenance, her statement of income and expenses reflected $1,665 as income from gross interest and dividends and at trial in 2022, it was $793.58. At trial, Bernstein presented the testimony of a CPA and business valuator (Expert). He testified to various scenarios regarding how Cullen should have invested the four funds awarded to her in the dissolution. Using the total of those assets in 2010, Expert testified he used an average rate of return of 2.93 percent to calculate what Cullen's income could be in 2021 had she invested the assets awarded to her as he suggested.

11

Based upon this testimony, the court imputed a net return on her portfolio of $39,189 per year, or $3,266 per month to Cullen.

In original dissolution proceedings, the interest a spouse may earn from marital property awarded to her must be considered when determining whether she needs maintenance and the appropriate amount, but this is not an original proceeding for dissolution. *Breihan v. Breihan*, 73 S.W.3d 771, 777 (Mo. App. E.D. 2002). Instead, Bernstein bears the burden to prove an unknown and unforeseeable change of circumstance so substantial and continuing to render the original award unreasonable. *Swartz v. Johnson*, 192 S.W.3d 752, 755 (Mo. App. W.D. 2006).

Here Bernstein testified at the modification trial that he was well aware of the assets awarded to Cullen at the time of the dissolution when he agreed to pay her $10,000 per month in maintenance. Cullen's investment income actually decreased from $1,665 per month at the time of dissolution to $793.58 at the modification trial. Even this decrease in the income from those assets was reasonably foreseeable at the time of dissolution when the parties agreed to $10,000 per month in maintenance. Expert's speculative testimony regarding what Cullen could have done to result in an increase in assets which were awarded to her at the time of the dissolution and thus increase her income does not constitute a change of circumstances justifying modification when that income simply does not exist. *Shanks*, 117 S.W.3d at 721; *see also Theilen v. Theilen*, 911 S.W.2d 317, 319 (Mo. App. W.D. 1995). Point two of Cullen's cross appeal is granted.

In her third point on cross appeal, Cullen contends the court erred in reducing maintenance because it misapplied the law by increasing the employment income previously imputed to her at dissolution, and therefore, could not constitute a change of circumstances. In his response Bernstein argues there is no support for the imputation of a gross monthly income of $2,500 for maintenance purposes at the time of dissolution because it appears only in the Form

12

calculation of child support. We find this argument unpersuasive because at trial Bernstein specifically testified he was well aware of the income imputed to Cullen when the parties agreed to $10,000 per month in maintenance. Indeed, he derived the benefit of her imputed income as it increased her income and decreased his in calculating his child support obligation.

A vocational rehabilitation counselor, T.K., evaluated Cullen during the 2010 dissolution proceedings and determined she had not been employed outside the home for several years. He opined she could earn a salary in the range of $22,500 to $28,720 per year based on her education and prior employment history. As a result, the parties agreed to a gross imputed income of $2,500 per month ($30,000 per year) to Cullen.

At trial on the motion to modify, T.K. testified regarding his evaluation of Cullen and her employability. He considered Cullen's health concerns, primarily her limitations from rheumatoid arthritis and determined she was employable at a potential range of salary between $24,960 and $38,000 per year. He opined that had Cullen become employed in 2010, she could currently conservatively be expected to earn $40,000 but more likely closer to $50,000 per year. The amended judgment first found Cullen capable of earning a gross annual income of $50,000 and subsequently $40,000 per year. At oral argument, counsel for Bernstein conceded the second, lower figure was "fair" and within the range of evidence.

Again, in using this imputed income as a basis to support the finding of a substantial and continuing change of circumstances which would warrant a modification of maintenance, the court misapplied the law. In his petition, Bernstein alleged Cullen failed to make a good-faith effort to seek or maintain employment to achieve financial independence or become self-sufficient constituted a change of circumstances warranting termination of his maintenance obligation. But the parties agreed to impute $30,000 to her at dissolution (which was higher than

13

the range T.K. imputed to her of $22,500 to $28,720) when Bernstein agreed to pay her $10,000 per month as modifiable maintenance.

We strongly agree with the dissent Cullen had a good-faith, affirmative duty to seek or maintain employment but failed to do so and we do not abrogate her of that responsibility pursuant to Missouri law. However, at oral argument counsel for Bernstein conceded that the court properly remedied Bernstein's claim by imputing income to her as if she was fully employed since the dissolution.[3] This resulted in a $10,000 increase to her annual income, which the dissent acknowledges is "modest." If Cullen was actually earning $30,000 in 2010, and maintained employment over the approximately twelve years since the dissolution, Bernstein's motion to modify would still fail.

We respectfully disagree with the dissent's assertion that we hold Cullen's failure to seek employment was foreseeable. Rather, we hold it is this $10,000 increase in annual income that was foreseeable. Thus, as a matter of law, it is not a substantial and continuing departure from circumstances known and considered when Bernstein initially consented to pay Cullen $10,000 per month in maintenance. *See Shanks*, 117 S.W.3d at 721;[4] *Swartz*, 192 S.W.3d at 755 (to warrant modification change must involve departure from conditions known at the time of dissolution) (quoting *Rustemeyer*, 148 S.W.3d at 871); *Severn v. Severn*, 567 S.W.3d 260, 257-58 (Mo. App. W.D. 2019). As a result, point three on cross appeal is granted.

In conclusion as to Cullen's income, we hold Bernstein failed to meet his statutory burden of proof which must be strictly construed as a matter of law. First, the law does not

---

[3] The court's imputation of income is a significant distinction from the facts of the *Markowski v. Markowski*, 736 S.W.2d 463, 466 (Mo. App. W.D. 1987), and *Hartzell v. Hartzell*, 976 S.W.2d 624, 626 (Mo. App. E.D. 1998), relied upon by the dissent. In each of those cases, no income was imputed to the spouse receiving maintenance.
[4] Unlike Cullen who was imputed income as if she were fully employed both at the time of dissolution and modification, the wife in *Shanks* was not working at the time of dissolution but later obtained part-time employment. 117 S.W.3d at 721. Our court concluded mere part-time employment was sufficient to satisfy her affirmative duty to become self-sufficient. *Id.*

14

permit him to require Cullen to diminish her assets to hypothetically increase her income to establish a substantial and continuing change of circumstances. Furthermore, Cullen's investment income actually decreased and her imputed income minimally increased since the dissolution when Bernstein agreed to pay $10,000 per month in maintenance. These are foreseeable changes which also are not grounds to modify much less terminate his maintenance obligation. As a result, because there was no showing of the requisite statutory substantial and continuing change in circumstances as he pled regarding Cullen's income, the court erred as a matter of law in reducing his maintenance obligation to $5,000 per month and awarding him $25,000 in attorney fees. Therefore, we grant the first three points of Cullen's cross appeal and reverse the amended judgment reducing Bernstein's maintenance obligation.

## Attorney Fees

Both Bernstein and Cullen assert points alleging the court erred in ordering Cullen to pay $25,000 of Bernstein's attorney fees. In point three on appeal, Bernstein claims the court should have awarded him more, and in her sixth and final point on cross appeal, Cullen argues the court abused its discretion in ordering her to pay attorney fees. As a result of the court's misapplication of law, we reverse the judgment itself, including the award of attorney fees.

However, we would be remiss if we did not discuss the court's findings regarding the financial resources of the parties and Cullen's conduct which Bernstein claims increased his attorney fees. As a general matter, parties are responsible for their own fees. *Goins v. Goins*, 406 S.W.3d 886, 891 (Mo. banc 2013). Pursuant to Section 452.355.1, the court may award attorney fees after considering "all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action."

Here, yet again, the court issued contradictory findings. While the court acknowledged Section 452.355 provides for the consideration of the financial resources as a relevant factor in

15

awarding attorney fees, the court contemporaneously penalized Cullen for her "unnecessary pursuit of irrelevant issues, such as [Bernstein's] financial position." But Bernstein's petition put his finances at issue from the outset of this litigation with his claim for attorney fees so Cullen's pursuit of his financial records was clearly necessary. The judgment also gave credit to Bernstein's claims that Cullen increased his attorney fees, citing her refusal to settle, to voluntarily submit to a vocational evaluation, and to complete a satisfaction to the court Bernstein was current on maintenance, which was not premised on any conduct by Cullen, but by the State of Missouri. However, this conduct is not unusual in the course of domestic litigation much less sufficient to merit an award of attorney fees.

The court's final finding that Cullen "would certainly agree that she should not have ignored [Bernstein's] efforts to attempt to resolve the instant issues before the time that he felt compelled to file his Motion to Modify" is the most problematic. Nowhere in the statute regarding consideration of the conduct of the parties does it permit an award of attorney fees for a party to exercise her fundamental due process rights. Cullen was entitled to litigate her belief that Bernstein's claims were "baseless because in order to modify our contract, that there has to be consistent and significant changes to either - - to my circumstances. And there has not been significant – the only significant changes I see on [Bernstein's] side is he's making more money than he was at the time of our divorce." Indeed, Cullen was correct. This conclusion, in addition to the tremendous income disparity between these parties and the dearth of evidence at trial to support a finding Cullen engaged in dilatory conduct sufficient to award attorney fees to Bernstein, would constitute reversible error.

**Conclusion**

The judgment of the court is reversed. Rule 84.14 allows this court to give "such judgment as the court ought to give" and instructs that "[u]nless justice otherwise requires, the

16

[appellate] court shall dispose finally of the case." Here, Bernstein wholly failed to meet his burden of proving a substantial and continuing change of circumstances that rendered the original award unreasonable. He also failed to present evidence warranting an award of attorney fees. Therefore, this court exercises its discretion and enters judgment under Rule 84.14 in favor of Cullen denying Bernstein's motion to modify and denying his request for attorney fees. The original judgment ordering Bernstein to pay maintenance to Cullen in the amount of $10,000 per month remains in full force effect.

_____
Lisa P. Page, Presiding Judge

Angela T. Quigless, J., concurs
Gary M. Gaertner, Jr., J., dissents in a separate opinion.



# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| CAROL CULLEN, | ) | ED111233 |
| | ) | |
| Respondent/Cross-Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | 08SL-DR05180-02 |
| | ) | |
| ROBERT BERNSTEIN, | ) | Honorable Heather R. Cunningham |
| | ) | |
| Appellant. | ) | FILED: May 28, 2024 |

Dissent

I respectfully dissent from the majority opinion on the narrow issue of whether the trial court erred in reducing Bernstein's maintenance obligation based on imputing employment income to Cullen. The trial court here reduced Bernstein's maintenance obligation from $10,000 to $5,000 based on a variety of factors. I agree with the majority opinion that the trial court erred in its application of law on several of those factors.[1] However, I would find Bernstein met his burden to show a substantial and continuing change in circumstances with regard to Cullen's imputed

---

[1] While I do not dissent from the majority's opinion that, under the circumstances here, Cullen was not engaged in a relationship that was the equivalent of marriage, the Missouri Legislature should delineate what circumstances exactly give rise to a quasi-marriage for the purposes of terminating maintenance, rather than leaving this issue to the courts to define on a case-by-case basis.

income from employment, sufficient to justify the modification of maintenance on that ground. While the majority opinion enters judgment under Rule 84.14 in favor of Cullen and denying Bernstein's motion to modify, I would remand for the trial court to enter an amended judgment reducing Bernstein's maintenance obligation at least by an amount of the increased imputed employment income supported by the record. The majority opinion correctly notes that Bernstein did not request this relief, in that he requested the termination, rather than a reduction, of maintenance. However, Cullen does specifically ask for this relief: in her third point on appeal, Cullen challenges the trial court's calculation of the reduction of maintenance and requests that "the trial court's imputation of $40,000 gross or $31,880 net per year … be reversed for recalculation." The proper relief here is to remand for the trial court to recalculate a reduced maintenance award below $10,000 per month.

The party receiving support has an affirmative duty to seek employment to achieve financial independence, unless the circumstances prevent such contribution. Stine v. Stine, 401 S.W.3d 567, 571 (Mo. App. E.D. 2013). The failure of the supported spouse to make a good faith effort to seek employment to become self-supporting within a reasonable time after the dissolution may, by itself, form the basis for modification of a maintenance award. Shanks v. Shanks, 117 S.W.3d 718, 720 (Mo. App. E.D. 2003); see also Hartzell v. Hartzell, 976 S.W.2d 624, 626 (Mo. App. E.D. 1998) (wife's admission that she was able to seek employment but chose never to do so constituted substantial change in circumstances justifying modification of maintenance award); Markowski v. Markowski, 736 S.W.2d 463, 466 (Mo. App. W.D. 1987) (in light of wife's work experience and academic credentials, her failure to earn any income for seven years constituted change in circumstances sufficient to justify termination of maintenance).

2

Here, Cullen was not working outside the home either at the time of the original 2010 dissolution judgment or at the time of the 2022 modification judgment. The 2010 trial court imputed $30,000 in employment income to Cullen in the original dissolution judgment, and the 2022 trial court imputed $40,000 in employment income to Cullen in the modification judgment. The majority opinion finds the amount of $40,000 in imputed employment income is proper, but it reasons that, because this $10,000 increase in imputed employment income between 2010 and 2022 was foreseeable, Bernstein was unable to prove a substantial and continuing departure from the circumstances he knew and considered when he agreed to pay Cullen $10,000 per month in maintenance. I disagree.

The change in circumstances here results not from the modestly different amounts of employment income imputed to Cullen in 2022 versus 2010, but from her failure to seek employment in the twelve years since the original dissolution judgment, which in itself constitutes a change in circumstances sufficient to justify modification of the maintenance award. See Shanks, 117 S.W.3d at 720; Hartzell, 976 S.W.2d at 626; Markowski, 736 S.W.2d at 466. The party receiving support has a duty to become self-supporting, and imputing income to the receiving party in the original dissolution does not abrogate that continuing duty. The majority opinion reasons that, because the parties already took into consideration that Cullen was not working outside the home in determining the appropriate amount of maintenance in the original dissolution, her continued failure to seek work outside the home was foreseeable and cannot be considered a change in circumstances sufficient to warrant modification. The effect of this reasoning is essentially to abrogate the responsibility of the party receiving support to become self-sufficient, which is inconsistent with Missouri case law.

3

Accordingly, I agree with the trial court's modification judgment finding Bernstein met his burden to show a substantial and continuing change of circumstances occurred, sufficient to warrant a reduction of his maintenance obligation based on Cullen's failure to attempt to become self-supporting.

For the foregoing reasons, I respectfully dissent.


_____
Gary M. Gaertner, Jr., Judge